UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL OTTO KOETHER IRA
ROLLOVER, on behalf of itself and all
others similarly situated,

Plaintiff,

v.

MORTEN ARNTZEN, MYLES R. ITKIN,
OUDI RECANATI, G. ALLEN
ANDREAS III, ALAN R. BATKIN,
THOMAS B. COLEMAN, CHARLES A.
FRIBOURG, STANLEY KOMAROFF,
SOLOMON N. MERKIN, JOEL I.
PICKET, ARIEL RECANATI, THOMAS
F. ROBARDS, JEAN-PAUL VETTIER,
MICHAEL J. ZIMMERMAN,
CITIGROUP GLOBAL MARKETS, INC.,
MORGAN STANLEY & CO.
INCORPORATED, HSBC SECURITIES
(USA) INC., DEUTSCHE BANK
SECURITIES INC., DnB NOR
MARKETS, INC., GOLDMAN, SACHS
& CO., ING FINANCIAL MARKETS
LLC, PRICEWATERHOUSECOOPERS
LLP,

Defendants.

---

**12 CV 9104**

No. 12 Civ. _____

**NOTICE OF REMOVAL**

---

PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1331, 1334(b), 1441, 1446 and 1452(a), defendants Myles R. Itkin, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Oudi Recanati, Thomas F. Robards, Jean-Paul Vettier, and Michael J. Zimmerman (collectively, the "Individual Defendants"), and PricewaterhouseCoopers LLP, by and through the undersigned counsel, hereby remove

this action from the Supreme Court of the State of New York, County of New York to the United States District Court for the Southern District of New York.   The grounds for removal are as follows:

      1.    On November 21, 2012, Plaintiff filed a Summons and a Complaint (the "Complaint") in the Supreme Court of the State of New York, County of New York, initiating an action assigned Index No. 654037/2012 (the "Action").   True and correct copies of all process, pleadings, orders, records and proceedings in the State Court are attached hereto as Exhibit A.

      2.    On November 23, 2012, defendants HSBC Securities (USA) Inc., Goldman, Sachs & Co., and Deutsche Bank Securities Inc. purportedly were served with the Summons and Complaint.   On November 26, 2012, defendants Citigroup Global Markets Inc., ING Financial Markets LLC, Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated), and PricewaterhouseCoopers LLP purportedly were served with the Summons and Complaint.   On November 28, 2012, defendant DNB Markets, Inc. (f/k/a DnB NOR Markets, Inc.) purportedly was served with the Summons and Complaint.   On November 29, 2012, defendants Andreas, Arntzen, Batkin, Coleman, Fribourg, Komaroff, Merkin, Picket, A. Recanati, O. Recanati, Robards, Vettier, and Zimmerman purportedly were served with the Summons and Complaint.   On November 30, 2012, defendant Itkin purportedly was served with the Summons and Complaint.

      3.    The Complaint purports to assert claims against all defendants under Section 11 of the Securities Act of 1933 (the "Securities Act") (15 U.S.C. § 77k),

and claims against the Underwriter Defendants[1] under Section 12(a)(2) of the Securities Act (15 U.S.C. § 77l(a)(2)), in connection with a March 24, 2010 offering of 8 1/8% Senior Notes (the "Notes") by issuer Overseas Shipholding Group, Inc. ("Overseas"), not named as a defendant herein, based on alleged misstatements or omissions of material fact in the Registration Statement, Prospectus, Prospectus Supplement, and/or Pricing Term Sheet for the Notes (the "Offering Materials"). *See, e.g.*, Complaint ¶¶ 1, 11, 74–81, 85–88, 92–94. The Complaint also purports to assert claims against the Individual Defendants for control person liability under Section 15 of the Securities Act (15 U.S.C. § 77o).

        4.    In filing or consenting to this Notice of Removal, defendants do not waive any rights or defenses that may be available to them, including but not limited to personal jurisdiction, and do not concede that the allegations in the Complaint state a valid claim under any law.

        5.    This Court has original jurisdiction over the Action for two separate and independent reasons.

**This Action is "Related To" Ongoing Bankruptcy Proceedings in Federal Court**

        6.    Because the action is "related to" proceedings under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 1101 *et seq.*), this Court has original jurisdiction over this matter under 28 U.S.C. § 1334(b), and this Action may be removed to this Court pursuant to 28 U.S.C. § 1452(a).

---

[1]    The "Underwriter Defendants" include Citigroup Global Markets Inc., Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated), HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DNB Markets, Inc. (f/k/a DnB NOR Markets, Inc.), Goldman, Sachs & Co., and ING Financial Markets LLC.

7.    On November 14, 2012, Overseas filed a voluntary petition for relief under the Bankruptcy Code.   That action is pending in the United States Bankruptcy Court for the District of Delaware under the caption *In re Overseas Shipholding Group, Inc., et al.*, No. 12-20000 (PJW) (Bankr. D. Del.).

8.    A civil action is "related to" a bankruptcy proceeding if it "might have any 'conceivable effect' on the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992).  There can be no dispute that such a relationship exists in the present case.

9.    Pursuant to the Underwriting Agreement entered into by Overseas, annexed hereto as Exhibit B, Overseas agreed to indemnify the Underwriter Defendants for any and all losses, claims, damages and liabilities (joint or several), including, without limitation, legal fees and other expenses incurred, that arise out of, or are based upon, any untrue statement or alleged untrue statement of a material fact contained in the Offering Materials, or the omission or alleged omission of a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, including any legal or other expenses reasonably incurred—as incurred— by the Underwriter Defendants in investigating, preparing or defending against any such claim, as those expenses are incurred.  *See* Underwriting Agreement § 7(a).

10.    The Complaint alleges that the Offering Materials contained untrue statements of material fact. *See, e.g.,* Complaint ¶¶ 4–6, 49–62. The Underwriter Defendants are therefore entitled to indemnification, including reimbursement from Overseas of any fees and costs that the Underwriter Defendants incur in connection with this Action and for the amount of any judgment or settlement of the claims asserted in

this action.  The Underwriter Defendants will submit a proof of claim in the Overseas bankruptcy action with respect to such indemnification at an appropriate time not later than any bar date set for creditor claims.

11.     Similarly, under the Bylaws of debtor Overseas, annexed hereto as Exhibit C, all of the Individual Defendants—each of whom is or was a Director of Overseas—are entitled to be indemnified by Overseas for any judgment entered against them and all costs incurred as a result of this litigation.

12.     Article XV, Section 1 of the Overseas Bylaws provides that the "Corporation shall indemnify and hold harmless . . . any person . . . who was or is made or is threatened to be made a party to or a witness in or is otherwise involved in any action, suit, claim, inquiry or proceeding, whether civil, criminal, administrative or investigative (including an action by or in the right of the Corporation) and whether formal or informal . . . by reason of the fact that he or she . . . is or was a director or officer of the Corporation . . . against all liability and loss suffered, and expenses (including attorneys' fees) actually and reasonably incurred."

13.     Article XV, Section 2 allows for the advancement of payment while litigation is ongoing, stating that Overseas "shall to the fullest extent not prohibited by applicable law pay the expenses (including attorneys' fees) actually and reasonably incurred by a Covered Person who was or is made or is threatened to be made a party to or a witness in or is otherwise involved in any Proceeding, by reason of the fact that he or she . . . is or was a director or officer of the Corporation . . . in advance of its final disposition."

14.     Each of the Individual Defendants is named in the Complaint "by reason of the fact that he . . . is or was a director or officer of" Overseas. *See* Complaint ¶¶ 16–29. Each Individual Defendant therefore has a right to indemnity from debtor Overseas "against all liability and loss suffered, and expenses (including attorneys' fees) actually and reasonably incurred" as a result of this lawsuit. *See* Bylaws Art. XV, § 1.

15.     Because of the indemnity claims which will arise, and have arisen, as a result of this lawsuit, this action has a direct effect on the estate of debtor Overseas, and thus on the bankruptcy proceedings identified above. *See Deangelis* v. *Corzine*, Nos. 11 Civ. 7866 (VM), 12 Civ. 3884 (VM), 2012 WL 3526659, at *3 (S.D.N.Y. Aug. 8, 2012) ("[A]s numerous courts in this district have done in similar circumstances, this Court finds that the existence of reasonable indemnification claims [by defendants] against a bankrupt entity is a sufficient basis for federal jurisdiction under §§ 1334(b) and 1452(a)."); *City of Ann Arbor Employees' Ret Sys.* v. *Citigroup Mortgage Loan Trust Inc.*, 572 F. Supp. 2d 314, 318–19 (E.D.N.Y. 2008) ("An impact on the debtor estate sufficient to invoke federal jurisdiction has been found where the defendant in the allegedly related action has a contractual claim for indemnification against the debtor."); *F.D.I.C.* v. *Banc of America Securities LLC*, No. 2:12–CV–532 JCM (RJJ), 2012 WL 2904310, at *3–4 (D. Nev. July 16, 2012) (upholding removal based on "related to" jurisdiction created by debtor's indemnification of underwriters). This Court therefore has original jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), and this action may be removed to the "district court for the district where such civil action is pending" pursuant to 28 U.S.C. § 1452(a). *See, e.g.*, *Mass. Bricklayers & Masons Trust Funds* v. *Deutsche Alt-A Secs., Inc.*, 399 B.R. 119, 123 (E.D.N.Y. 2009).

**This Action Seeks Redress for Alleged Violations of the Federal Securities Laws**

16.    Separately and independently, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's class action claims arise under federal law, to wit, Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l and 77o). *See* Complaint ¶ 1. The Securities Litigation Uniform Standards Act of 1998 ("SLUSA") expressly provides for, and indeed mandates, a federal forum for "covered class actions" asserting claims under the Securities Act, and this matter is therefore removable pursuant to 28 U.S.C. § 1441(a).

17.    There are two independent grounds for removal under SLUSA.

18.    First, SLUSA amended the jurisdictional provision of Section 22(a) of the Securities Act to eliminate state courts' concurrent jurisdiction over "covered class actions" raising Securities Act claims. The jurisdictional provision of the Securities Act, 15 U.S.C. § 77v(a), now provides that state and federal courts have concurrent jurisdiction over actions brought under the Securities Act, "*except* as provided in [Section 16] of this title with respect to covered class actions." 15 U.S.C. § 77v(a) (emphasis added). Therefore, federal courts have exclusive jurisdiction over "covered class actions" asserting claims under the Securities Act.

19.    Section 16 defines a "covered class action" as:

> [A]ny single lawsuit in which . . . one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members.

> 15 U.S.C. § 77p(f)(2)(A)(i)(II).

20.     This action is a "covered class action."  The named Plaintiff is seeking to recover damages on a representative basis on behalf of itself and others similarly situated, and the complaint alleges that questions of law or fact predominate over individual questions. *See, e.g.,* Complaint ¶¶ 41–46.

21.     Accordingly, the Supreme Court of the State of New York, New York County lacks concurrent jurisdiction over this action and it may only be heard in federal court.  This action is therefore removable pursuant to 28 U.S.C. § 1441(a).  *See, e.g., Kramer* v. *Fannie Mae (In re Fannie Mae 2008 Sec. Litig.)*, Nos. 08 Civ. 7831 (PAC), 09 Civ. 1352 (PAC), 2009 WL 4067266, at *2 (S.D.N.Y. Nov. 24, 2009); *Knox* v. *Agria Corp.*, 613 F. Supp. 2d 419, 425 (S.D.N.Y. 2009).

22.     Second, SLUSA amended Section 22(a) of the Securities Act to permit removal for "covered class actions" asserting Securities Act claims in connection with "covered securities."  *See* 15 U.S.C. § 77(v)(a); 15 U.S.C. § 77(p)(c).

23.     The removal provision of Section 22(a), 15 U.S.C. § 77v(a), amended by SLUSA, states, in relevant part, that "[e]xcept as provided in section 77p(c) of this title, no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a).  Section 77p(c) states:

> (c) Removal of covered class actions.
>
> Any covered class action brought in any State court involving a covered security, as set forth in subsection (b), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to subsection (b).
>
> 15 U. S. C. § 77p(c).

24.     This action is a "covered class action . . . involving a covered security." *See* 15 U.S.C. § 77p(c). As set forth above, this is a "covered class action." Likewise, the securities at issue, the Notes, are "covered securit[ies]" within the meaning of SLUSA because they were issued by Overseas, whose shares were, during the relevant period, listed on the New York Stock Exchange, and the Notes are "equal in seniority" or a "senior security" to those shares. 15 U.S.C § 77p(f)(3); 15 U.S.C. § 77r(b)(1).

25.     Because SLUSA carved out an exception for "covered class actions" involving "covered securities" from the pre-existing prohibition on removal in the Securities Act, this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a). *See Rubin* v. *Pixelplus Co.*, No. 06 Civ. 2964 (ERK), 2007 WL 778485, at *3–6 (E.D.N.Y. Mar. 13, 2007) (class actions alleging Securities Act claims removable under SLUSA); *accord Northumberland County Retirement System* v. *GMX Resources, Inc.*, 810 F. Supp. 2d 1282, (W.D. Okla. 2011); *Pinto* v. *Vonage Holdings Corp.*, No. 07-0062, 2007 WL 1381746, at *1 (D.N.J. May 7, 2007); *Rovner* v. *Vonage Holdings Corp.*, C.A. No. 07-178 (FLW), 2007 WL 446658, at *3 (D.N.J. Feb. 7, 2007); *Brody* v. *Homestore, Inc.*, 240 F. Supp. 2d 1122 (C.D. Cal. 2003); *Alkow* v. *TXU Corp.*, Nos. 02-CV-2738, 02-CV-2739, 2003 WL 21056750 (N.D. Tex. May 8, 2003); *see also Cal. Pub. Employees' Retirement Sys.* v. *WorldCom, Inc.*, 368 F.3d 86, 97–98 (2d Cir. 2004) ("[T]he [Securities] Act excepts 'class action[s] brought in state court' from the scope of the nonremoval provision and provides that those class actions '*shall* be removable to the Federal district court for the district in which the action is pending.'"), *aff'g In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 327–28 (S.D.N.Y. 2003) (indicating that class

action claims under the Securities Act are "covered by SLUSA's mandatory removal provision . . . .").

**The Procedural Requirements for Removal Have Been Satisfied**

26.     This action is removable to this Court because the Southern District of New York embraces the place where the State Court action is pending. *See* 28 U.S.C. § 1441(a).

27.     All defendants consent to this Notice of Removal. *See* 28 U.S.C. § 1446(b)(2)(A).   The consent of the Individual Defendants and PricewaterhouseCoopers LLP is denoted in the signature block below.    The consents of the Underwriter Defendants and defendant Arntzen are annexed as Exhibit D hereto.

28.     This Notice of Removal is being filed within thirty days of the date on which any defendant received through service a copy of the initial pleading and, therefore, it is timely. *See* 28 U.S.C. § 1446(b).

29.     No motions or other proceedings in this action are pending in the State Court.

30.     None of the defendants has served or filed an answer.

31.     In accordance with 28 U.S.C. § 1446(d), written notice of the filing of this Notice will promptly be served on counsel for Plaintiff, and a copy of this Notice will be filed with the Clerk of the Supreme Court of the State of New York, County of New York.

32.     In accordance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, orders, records and proceedings in the State Court are attached hereto as Exhibit A.

**WHEREFORE**, the Individual Defendants and defendant

PricewaterhouseCoopers LLP remove this action from the Supreme Court of the State of

New York, County of New York.

Dated:          New York, New York
                December 13, 2012

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019-6064
Tel. (212) 373-3000
Fax (212) 757-3990
rrosen@paulweiss.com

*Attorneys for Defendants G. Allen Andreas
III, Alan R. Batkin, Thomas B. Coleman,
Charles A. Fribourg, Stanley Komaroff,
Solomon N. Merkin, Joel I. Picket, Ariel
Recanati, Oudi Recanati, Thomas F.
Robards, Jean-Paul Vettier, and Michael J.
Zimmerman*

DECHERT LLP

David H. Kistenbroker
Joni S. Jacobsen
115 S. LaSalle Street, Suite 2600
Chicago, IL 60603
Tel.  (312) 646-5800
Fax  (312) 646-5858
david.kistenbroker@dechert.com
joni.jacobsen@dechert.com

*Attorneys for Defendant Myles R. Itkin*

11

LATHAM & WATKINS LLP

Miles N. Ruthberg
Jamie L. Wine
885 Third Avenue
New York, NY 10022
Tel.  (212) 906-1200
Fax  (212) 751-4864
miles.ruthberg@lw.com
jamie.wine@lw.com

*Attorneys for Defendant*
*PricewaterhouseCoopers LLP*

EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Paul Otto Koether IRA Rollover, On Behalf of    :
Itself and All Others Similarly Situated,          :

                    :

             Plaintiff,       :

                    :

      v.                    :

                    :

Morten Arntzen, Myles R. Itkin, Oudi Recanati,   :
G. Allen Andreas III, Alan R. Batkin,         :
Thomas B. Coleman, Charles A. Fribourg,      :
Stanley Komaroff, Solomon N. Merkin,        :
Joel I. Picket, Ariel Recanati, Thomas F. Robards,   :
Jean-Paul Vettier, Michael J. Zimmerman,      :
Citigroup Global Markets Inc., Morgan Stanley    :
& Co. Incorporated, HSBC Securities (USA) Inc.,   :
Deutsche Bank Securities Inc., DnB NOR Markets,   :
Inc., Goldman, Sachs & Co., ING Financial      :
Markets LLC, PricewaterhouseCoopers LLP,     :

                    :

            Defendants.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**CLASS ACTION**

**COMPLAINT FOR VIOLATIONS
OF SECTIONS 11, 12 AND 15 OF
THE SECURITIES ACT OF 1933**

**JURY TRIAL DEMANDED**

Plaintiff Paul Otto Koether IRA Rollover ("Plaintiff") alleges the following based on the investigation of counsel, Bernstein Litowitz Berger & Grossmann LLP, which included, *inter alia*, a review of United States Securities and Exchange Commission ("SEC") filings by Overseas Shipholding Group, Inc. ("Overseas" or the "Company"), as well as other reports, advisories, press releases, and other public statements issued by or with respect to Overseas and/or by the other Defendants named herein.   Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.  The claims asserted herein are not based on any knowing or reckless conduct by or on behalf of the Defendants – *i.e.*, they do not allege, and do not sound in, fraud. Plaintiff specifically disclaims any allegations of fraud, scienter, or recklessness in these non-fraud claims.

## NATURE OF THE ACTION

1.     This is a class action alleging violations of Sections 11, 12, and 15 of the Securities Act of 1933, 15 U.S.C. § 77a et seq. (the "Securities Act") on behalf of all persons or entities who purchased or otherwise acquired securities in or traceable to Overseas' $300 million registered public offering of 8 1/8% Senior Notes due 2018 (the "Notes") conducted on March 24, 2010 (the "Offering").

2.     Overseas, the issuer of the Notes, is one of the world's largest bulk ocean shipping companies, and is primarily engaged in the ocean transport of crude oil and petroleum products. Overseas is headquartered in New York City and derives nearly all of its pre-tax income from its international shipping operations.

3.     Overseas conducted the Offering pursuant to a Shelf Registration Statement and Prospectus, filed with the SEC on Form S-3 on March 22, 2010 (the "Registration Statement").

The Registration Statement was supplemented through a Preliminary Prospectus Supplement dated March 22, 2010, a Prospectus Supplement dated March 24, 2010, and a Pricing Term Sheet dated March 24, 2010.   These securities offering materials also incorporated by reference numerous other public filings of Overseas, including its annual report on Form 10-K for the year ended December 31, 2009, as filed with the SEC on March 1, 2010 (the "2009 Form 10-K").

4.    The Registration Statement and Prospectus, Prospectus Supplements, and/or Pricing Term Sheet (including any other documents incorporated by reference) are referred to collectively as the "Offering Materials."

5.    The Individual Defendants (as defined below) each signed the Registration Statement, signifying that the Offering Materials were complete and accurate.  The Underwriter Defendants (as defined below) purportedly performed due diligence on the Offering prior to selling the Notes, and the Auditor Defendant, PricewaterhouseCoopers LLP, specifically consented to the incorporation of its audited financial report dated March 1, 2010 relating to the accuracy of Overseas' financial statements and the effectiveness of its internal controls over financial reporting.

6.    As Overseas has recently admitted, the Offering Materials contained untrue statements of material fact.  Among other things, in violation of the Securities Act, the Offering Materials contained material misstatements of Overseas' net income and diluted earnings per share for the first, second, third and fourth quarters of 2009, and for the full year ended December 31, 2009.

7.    As explained further herein, investors did not learn of these material misstatements until October 22, 2012.  On that day, Overseas stunned the market by announcing

that its quarterly and annual financial statements for "at least" 2009 through the first two quarters of 2012 "should no longer be relied upon," and had to be withdrawn. Overseas stated it was withdrawing its financial statements due to a "tax issue arising from the fact that the Company is domiciled in the United States and has substantial international operations, and relating to the interpretation of certain provisions contained in the Company's loan agreements." The Company further disclosed that it was "evaluating its strategic options," including a potential bankruptcy filing.

8.     The misstatements in Overseas' financial statements had severe negative consequences for the Company and investors in the Offering. In response to the October 22 announcement, rating agencies immediately downgraded Overseas. For example, Standard & Poor's Rating Service downgraded Overseas to "CCC-" and stated that "[t]he downgrade reflects our belief that [Overseas] is facing a high probability of very near-term default."

9.     Indeed, on November 14, 2012, Overseas filed for bankruptcy under Chapter 11, Title 11 of the United States Code. In its bankruptcy filing, Overseas stated that its October 22 announcement concerning the inaccuracy of its previously-issued financial statements was one of the "main factors" that caused it to file for bankruptcy. As Overseas explained in its filing, because it was required to withdraw its previously-issued financial statements, including the materially inaccurate 2009 financial statements incorporated into the Offering Materials, "the credit and capital markets are all but closed" to the Company, and thus, the Company could not raise funds that it needed to run the business.

10.     Investors in the Offering suffered significant damages as a result of the misstatements in the Offering Materials. As of the date of this suit, the price of the Notes has

3

declined approximately 58% since the Offering. Plaintiff brings this Action to recover these damages under Sections 11, 12(a)(2) and 15 of the Securities Act.

### JURISDICTION AND VENUE

11.     The claims asserted herein arise under Sections 11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l(a)(2), and 77o.

12.     This court has jurisdiction pursuant to Section 22 of the Securities Act, 15 U.S.C. § 77v. Jurisdiction is also conferred by CPLR § 301.

13.     Venue is proper in this County pursuant to Section 22 of the Securities Act. Venue is also proper in this County pursuant to CPLR § 503.   Overseas and numerous Defendants are located in this County. Many of the acts alleged herein, including the preparation and dissemination of the untrue statements contained in the Offering Materials, occurred in substantial part in this County.

### ISSUER

14.     Overseas was the issuer of the Notes. As noted above, Overseas is one of the world's leading bulk shipping companies and is engaged primarily in the ocean transportation of crude oil and petroleum products both domestically and internationally. Overseas is incorporated under the laws of Delaware, and its principal executive offices are located at 666 Third Avenue, New York, New York. Overseas is not named as a Defendant in this Action because it filed a petition for bankruptcy under Chapter 11, Title 11 of the United States Code on November 14, 2012 in the United States Bankruptcy Court for the District of Delaware. At all relevant times prior to filing for bankruptcy, Overseas' common stock traded on the NYSE under the symbol "OSG." Overseas' common stock currently trades over the counter under the symbol "OSGIQ."

## PARTIES

**Plaintiff**

15.     The Plaintiff is the Paul Otto Koether IRA Rollover.  The Paul Otto Koether IRA Rollover purchased the Notes issued pursuant to the materially misleading Registration Statement and related Offering Materials.  The Paul Otto Koether IRA Rollover suffered damages pursuant to the Securities Act.

**Individual Defendants**

16.     Defendant Morten Arntzen ("Arntzen") was, at all times relevant hereto, the Chief Executive Officer and President of Overseas and a member of the Board of Directors. Defendant Arntzen signed the Registration Statement and Overseas' 2009 Form 10-K.

17.     Defendant Myles R. Itkin ("Itkin") was, at all times relevant hereto, the Chief Financial Officer, Executive Vice President and Treasurer of Overseas.  Defendant Itkin signed the Registration Statement and Overseas' 2009 Form 10-K.

18.     Defendant G. Allen Andreas III ("Andreas") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Andreas signed the Registration Statement and Overseas' 2009 Form 10-K.

19.     Defendant Alan R. Batkin ("Batkin") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Batkin signed the Registration Statement and Overseas' 2009 Form 10-K.

20.     Defendant Thomas B. Coleman ("Coleman") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Coleman signed the Registration Statement and Overseas' 2009 Form 10-K.

21.     Defendant Charles A. Fribourg ("Fribourg") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Fribourg signed the Registration Statement and Overseas' 2009 Form 10-K.

22.     Defendant Stanley Komaroff ("Komaroff") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Komaroff signed the Registration Statement and Overseas' 2009 Form 10-K.

23.     Defendant Solomon N. Merkin ("Merkin") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Merkin signed the Registration Statement and Overseas' 2009 Form 10-K.

24.     Defendant Joel I. Picket ("Picket") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Picket signed the Registration Statement and Overseas' 2009 Form 10-K.

25.     Defendant Ariel Recanati was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Ariel Recanati signed the Registration Statement and Overseas' 2009 Form 10-K.

26.     Defendant Oudi Recanati was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Oudi Recanati signed the Registration Statement and Overseas' 2009 Form 10-K.

27.     Defendant Thomas F. Robards ("Robards") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Robards signed the Registration Statement and Overseas' 2009 Form 10-K.

6

28.     Defendant Jean-Paul Vettier ("Vettier") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Vettier signed the Registration Statement and Overseas' 2009 Form 10-K.

29.     Defendant Michael J. Zimmerman ("Zimmerman") was, at all times relevant hereto, a member of the Board of Directors of Overseas.  Defendant Zimmerman signed the Registration Statement and Overseas' 2009 Form 10-K.

30.     The Defendants listed in ¶¶16-29 are sometimes referred to collectively herein as the "Individual Defendants."

**Underwriter Defendants**

31.     Defendant Citigroup Global Markets Inc. ("Citigroup") was a joint book running manager and an underwriter of the Offering as specified herein.  As an underwriter of the Offering, Citigroup was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials.  Citigroup underwrote $105 million of the Notes and received fees of nearly $2 million.

32.     Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") was a joint book running manager and an underwriter of the Offering as specified herein.  As an underwriter of the Offering, Morgan Stanley was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials.  Morgan Stanley underwrote $60 million of the Notes and received fees of over $1 million.

33.     Defendant HSBC Securities (USA) Inc. ("HSBC") was a joint book running manager and an underwriter of the Offering as specified herein.  As an underwriter of the Offering, HSBC was responsible for ensuring the truthfulness and accuracy of the various

statements contained in or incorporated by reference into the Offering Materials.   HSBC underwrote $60 million of the Notes and received fees of over $1 million.

34.    Defendant Deutsche Bank Securities Inc. ("Deutsche Bank") was an underwriter of the Offering as specified herein.   As an underwriter of the Offering, Deutsche Bank was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials.

35.    Defendant DnB NOR Markets, Inc. ("DnB") was an underwriter of the Offering as specified herein.   As an underwriter of the Offering, DnB was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials.

36.    Defendant Goldman, Sachs & Co. ("Goldman") was an underwriter of the Offering as specified herein.   As an underwriter of the Offering, Goldman was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials.

37.    Defendant ING Financial Markets LLC ("ING") was an underwriter of the Offering as specified herein.   As an underwriter of the Offering, ING was responsible for ensuring the truthfulness and accuracy of the various statements contained in or incorporated by reference into the Offering Materials.

38.    The Defendants listed in ¶¶31-37 are sometimes referred to collectively herein as the "Underwriter Defendants."   In total, the Underwriter Defendants underwrote the $300 million offering and shared approximately $5.25 million in fees.

39.    Each respective Underwriter Defendant is liable under Sections 11 and 12(a)(2) of the Securities Act to investors who purchased the Notes in or traceable to the Offering up to an

amount equal to the amount that each respective Underwrite Defendant underwrote in the Offering.

**Auditor Defendant**

40.     Defendant PricewaterhouseCoopers LLP ("PwC"), at all relevant times, served as an Independent Registered Public Accounting Firm for Overseas.   PwC audited Overseas' financial statements for the year ended December 31, 2009, the accuracy of which was certified by PwC and included in Overseas' annual report for 2009, which was filed on Form 10-K with the SEC on March 1, 2010 and incorporated by reference into the Offering Materials. PwC also audited and approved the effectiveness of Overseas' internal controls as of December 31, 2009. PwC consented to the incorporation by reference into the Registration Statement of its reports certifying the accuracy of Overseas' financial statements for the year ended December 31, 2009 and the effectiveness of Overseas' internal controls as of that date.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules on behalf of a class consisting of all persons who purchased or otherwise acquired the Notes in or traceable to the Offering as defined herein (the "Class") from the effective date of the Offering through the date of the filing of this action. Excluded from the Class are Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

42.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through appropriate discovery, Plaintiff reasonably believes that there are

hundreds or thousands of members in the Class. Record owners and other members of the Class may be identified by records maintained by Overseas and Defendants and may be notified of the pendency of the Action by mail, the internet or publication using the form of notice similar to that customarily used in securities class actions.

43. Plaintiff's claims are typical of the claims of the members of the Class because all members of the Class are similarly affected by Defendants' wrongful conduct in violation of statutory law as complained of herein.

44. Plaintiff will fairly and adequately represent the interests of the members of the Class and has retained Bernstein Litowitz Berger & Grossmann LLP, counsel competent and experienced in class and securities litigation.

45. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among common questions of law and fact common to the Class are:

      a. whether the provisions of the Securities Act were violated by the Defendants as alleged herein;

      b. whether the Registration Statement and related Offering Materials contained materially untrue statements or omitted statements of material fact; and

      c. to what extent the members of the Class have sustained damages pursuant to the statutory measure of damages.

46. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## VIOLATIONS OF THE SECURITIES ACT

### Overseas Conducts A $300 Million Public Offering Pursuant To Materially Misleading Offering Materials

47.      At the time of the Offering, Overseas was a leading company engaged in the ocean shipping of crude oil and petroleum products.  While Overseas is domiciled in the United States, a substantial portion of Overseas' business involves international shipping.  According to Overseas' 2009 Form 10-K, of the 106 vessels in its fleet, 84 operated in the international market, and substantially all of Overseas' pre-tax income was earned by its international shipping operations.

48.      As explained in Overseas' 2009 Form 10-K, all of the Company's international flag vessels are owned or operated by foreign corporations that are subsidiaries of OSG International, Inc., ("OSG International") which is, in turn, a wholly owned subsidiary of Overseas.  OSG International is incorporated in the Marshall Islands.  The Company stated, including in its 2009 Form 10-K, that for taxable years beginning after December 31, 2004, it is no longer required to report taxable income on a current basis the undistributed foreign shipping income earned by OSG International.

49.      On March 24, 2010, Overseas conducted a $300 million public offering of 8 1/8% Senior Notes due 2018 (CUSIP 690368 AH8).  As Overseas has recently admitted, the Offering Materials pursuant to which the Offering was conducted materially misstated Overseas' quarterly and annual financial statements for the year ended December 31, 2009.  The Offering Materials incorporated by reference Overseas' 2009 Form 10-K.  The 2009 Form 10-K reported that, for

11

the year ended December 31, 2009, Overseas earned $70.17 million of net income, and $2.61 of diluted net income per common share.

50.     These statements were false.  Overseas' net income and diluted net income per share for 2009 were materially overstated because Overseas failed to properly account for tax liabilities arising from the fact that the Company is domiciled in the United States and has substantial international operations.

51.     The 2009 Form 10-K also reported Overseas' financial results for each quarter in 2009.  Specifically, the 2009 Form 10-K reported that:

    a.  For the first quarter of 2009, Overseas earned $123.26 million of net income, and $4.53 of diluted net income per common share;

    b.  For the second quarter of 2009, Overseas recorded a $7.82 million net loss, and a diluted loss of $0.33 per common share;

    c.  For the third quarter of 2009, Overseas recorded a $19.62 million net loss, and a diluted loss of $0.73 per common share; and

    d.  For the fourth quarter of 2009, Overseas recorded a $23.16 million net loss, and a diluted loss of $0.86 per common share.

52.     Each of the statements concerning Overseas' 2009 quarterly results set forth directly above was false.  Overseas' net income and diluted net income per share for the first, second, third and fourth quarters of 2009 were materially overstated and losses were understated because Overseas failed to properly account for tax liabilities arising from the fact that the Company is domiciled in the United States and has substantial international operations.

53.    The Prospectus Supplement dated March 24, 2010 also contained material misstatements of fact relating to Overseas' financial condition and its total capitalization.  With regard to the Company's financial flexibility, the Prospectus Supplement stated:

### Financial Flexibility

We believe our strong balance sheet, comparatively high credit rating and level of unencumbered assets provide significant financial flexibility. We have been able to access the unsecured bank markets, the public debt markets and the public equity markets, allowing us to borrow substantial amounts on an unsecured basis. This financial flexibility permits us to pursue attractive business opportunities.

54.    This statement was false.   Overseas' balance sheet was not strong and the Company did not have the financial flexibility that it claimed because Overseas failed to properly account for tax liabilities arising from the fact that the Company is domiciled in the United States and has substantial international operations.

55.    As pertaining to Overseas' total capitalization, the Prospectus Supplement dated March 24, 2010 set forth a table reflecting important financial metrics such as retained earnings and accumulated other comprehensive income/(loss), which were used to derive Overseas' total capitalization:

| | As of December 31, 2009 | | |
| --- | --- | --- | --- |
| | Actual | As Adjusted for the Prior Equity Offering | As Further Adjusted for this Offering |
| | (in thousands) | | |
| Cash and cash equivalents | $  474,690 | $  632,820 | $  632,820 |
| Short-term Investments | 50,000 | 50,000 | 50,000 |
| | $  524,690 | $  682,820 | $  682,820 |
| Long Term Debt: | | | |
| Unsecured revolving credit facilities | $  953,000 | $  953,000 | $  663,211 |
| Secured revolving credit facilities | 30,000 | 30,000 | 30,000 |
| 7.50% notes due 2024 | 146,000 | 146,000 | 146,000 |

13

| | | | |
|---|---|---|---|
| 8.75% debentures due 2013, net of unamortized discount of $50 | 74,485 | 74,485 | 74,485 |
| Floating rate secured term loans, due through 2023 | 599,260 | 599,260 | 599,260 |
| Fixed rate secured term loans, due through 2014 | 43,746 | 43,746 | 43,746 |
| 8 1/8% notes due 2018, being offered herein | — | — | 295,689 |
| | 1,846,491 | 1,846,491 | 1,852,391 |
| Less current portion | 33,202 | 33,202 | 33,202 |
| Total Long Term Debt | $1,813,289 | $1,813,289 | $1,819,189 |
| Equity: | | | |
| Common stock, $1.00 par value; 120,000,000 shares authorized; 40,790,759 issued and outstanding, actual and 44,290,759 shares issued and outstanding, adjusted | $   40,791 | $   44,291 | $   44,291 |
| Paid-in additional capital | 262,117 | 416,747 | 416,747 |
| Retained Earnings | 2,465,949 | 2,465,949 | 2,465,949 |
| | 2,768,857 | 2,926,987 | 2,926,987 |
| Less: Cost of treasury stock (13,933,435 shares) | 840,238 | 840,238 | 840,238 |
| | 1,928,619 | 2,086,749 | 2,086,749 |
| Accumulated other comprehensive income/(loss) | (60,764 ) | (60,764 ) | (60,764 ) |
| Total Equity | $1,867,855 | $2,025,985 | $2,025,985 |
| Total capitalization | $3,681,144 | $3,839,274 | $3,845,174 |

56.     The Company's financial metrics regarding retained earnings, accumulated other comprehensive income/(loss), and total capitalization were false because Overseas failed to properly account for tax liabilities arising from the fact that the Company is domiciled in the United States and has substantial international operations.

57.     The 2009 Form 10-K also included a Certification signed by Defendant Arntzen, which stated as follows:

> I, Morten Arntzen, certify that:
>
> 1.     I have reviewed this annual report on Form 10-K of Overseas Shipholding Group, Inc.;
>
> 2.     Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the

circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.      Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the Registrant as of, and for, the periods presented in this report;

4.      The Registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the Registrant and we have:

a.      Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the Registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

b.      Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

c.      Evaluated the effectiveness of the Registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

e.      Disclosed in this report any change in the Registrant's internal control over financial reporting that occurred during the Registrant's most recent fiscal quarter that has materially affected, or is reasonably likely to materially affect, the Registrant's internal control over financial reporting; and

5.      The Registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the Registrant's auditors and the audit

15

committee of Registrant's board of directors (or persons performing the equivalent functions):

a.   All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Registrant's ability to record, process, summarize and report financial information; and

b.   Any fraud, whether or not material, that involves management or other employees who have a significant role in the Registrant's internal control over financial reporting.

Date: February 26, 2010          /s/ Morten Arntzen
                                 Morten Arntzen
                                 Chief Executive Officer

58.   In addition, Defendant Itkin signed a certification in the 2009 Form 10-K that was virtually identical to the certification of Defendant Arntzen.

59.   The certifications of Defendants Arntzen and Itkin set forth above at ¶¶57-58 were materially false.  Contrary to their statements that Overseas maintained internal controls that provided "reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles," Overseas' internal controls contained material weaknesses that caused the Company's financial statements for 2009 to be materially misstated because they failed to properly account for Overseas' tax liabilities.

60.   The 2009 Form 10-K also included an Independent Auditors' Report signed by PwC which stated, in relevant part, as follows:

To the Board of Directors and Shareholders of Overseas Shipholding Group, Inc.:

In our opinion, the accompanying consolidated balance sheet and the related consolidated statements of operations, cash flows, and changes in equity present fairly, in all material respects, the financial position of Overseas Shipholding Group, Inc. and its

16

subsidiaries at December 31, 2009, and the results of their operations and their cash flows for the period ended December 31, 2009 in conformity with accounting principles generally accepted in the United States of America. Also in our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2009, based on criteria established in *Internal Control - Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).

. . .

/s/ PricewaterhouseCoopers LLP
New York, New York
March 1, 2010

2009 Annual Report

61.    PwC's statements set forth directly above were false.   Contrary to PwC's statement that the "consolidated statements of operations … present fairly, in all material respects, the financial position of Overseas Shipholding Group, Inc." for the year ended December 31, 2009, Overseas' net income and diluted net income per share for 2009 were materially overstated, as noted above in ¶¶49-50.  Further, contrary to PwC's statement that "the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2009," the Company's internal control over financial reporting contained material weaknesses, as noted above in ¶59.

62.    Unaware of the material misstatements in the Offering Materials, investors purchased the Notes in or traceable to the Offering.  The Offering closed on March 29, 2010. Overseas realized proceeds from the Offering of approximately $290 million after underwriting discounts, commissions and expenses.

<u>Overseas Admits That The</u>
<u>Offering Materials Were Materially Misleading</u>

63.     On October 3, 2012, Overseas filed a Form 8-K with the SEC disclosing that Defendant Andreas resigned from the Board of Directors due to concerns about the Company's accounting.  Specifically, in his resignation letter, Defendant Andreas stated that he was resigning because of a disagreement with the Board and the Audit Committee over its review of a "tax issue."  Defendant Andreas stated as follows:

> This letter will serve as my resignation from the Board of Directors of Overseas Shipholding Group, Inc. (the "Company") and any of its committees, including the Audit Committee.  My resignation is effective immediately.
>
> My resignation results from a disagreement with the Board as to the process the Board is taking in reviewing a tax issue.
>
> In taking this action, I urge you to report this issue to our auditors, PricewaterhouseCoopers LLP, prior to the Company disclosing my resignation with the SEC.  I understand that the Company must file a Form 8-K with the SEC when a director resigns in this context.
>
> I very much regret having to take this action.  I had hoped in prior discussions to convince the Board and Audit Committee to follow a different direction.  I was unsuccessful in those efforts.  As a result, I have decided to tender my resignation.

64.     The Company publicly filed with the Form 8-K a responsive letter from Defendant Zimmerman to Defendant Andreas, in which the Company denied the existence of any accounting issues.  In particular, Zimmerman stated that the Board was discussing the tax issue with PwC.  As Zimmerman wrote:

> The Board of Directors was disappointed to receive your resignation dated September 27, 2012.
>
> As you yourself have said after eight years of service on the Board, our Board of Directors has always tried to follow the best possible corporate governance practices in making decisions.

18

We do not understand your statement that the resignation resulted from a disagreement with the Board as to the process the Board is following in reviewing this issue.  The process we discussed at the September 20, 2012 Board meeting, including scheduling a follow-up Board meeting, to discuss the issue in detail (which has already occurred), is akin to that which we have taken on all issues that have come before our Board - thorough review, careful consideration and participation by all members of the Board.

A meeting of the audit committee has been scheduled for this week and we have already begun discussing the issue with PricewaterhouseCoopers LLP.

The Board is confident that the review process discussed at the September 20 meeting is prudent and consistent with appropriate governance standards.

65.     However, contrary to the reassurances in Defendant Zimmerman's letter, on

October 22, 2012, the Company stunned investors when it filed a Form 8-K admitting that, as a

result of its review of the tax issue, it had concluded that the Company's previously issued

quarterly and annual financial statements from "at least" the first quarter of 2009 through the

second quarter of 2012 "could no longer be relied upon," and thus, had to be withdrawn.  In

particular, the Company stated as follows:

As previously disclosed in a Current Report on Form 8-K filed on October 3, 2012, Overseas Shipholding Group Inc. (the "Company") is in the process of reviewing a tax issue arising from the fact that the Company is domiciled in the United States and has substantial international operations, and relating to the interpretation of certain provisions contained in the Company's loan agreements.  As a result of that continuing process, on October 19, 2012, *__the Audit Committee of the Board of Directors of the Company, on the recommendation of management, concluded that the Company's previously issued financial statements for at least the three years ended December 31, 2011 and associated interim periods, and for the fiscal quarters ended March 31 and June 30, 2012, should no longer be relied upon.__* (emphasis added).

19

66.     The impact of the Company's admission concerning its materially inaccurate financial statements was severe.  Indeed, the Company further stated in the October 22 Form 8-K that, in light of the need to withdraw its previously-issued financial statements, it was "evaluating its strategic options, including the potential voluntary filing of a petition for relief to reorganize under Chapter 11 of the Bankruptcy Code."

67.     Credit rating agencies immediately downgraded Overseas following the Company's October 22 disclosure.  As noted above, on October 22, S&P downgraded Overseas to CCC- because of S&P's determination that Overseas was "facing a high probability of very near-term default" based on the facts set forth in its October 22 announcement.  Similarly, on October 22, Moody's downgraded Overseas to Caa1 because of the probability that it would be forced to file for bankruptcy in light of its "new disclosures."

68.     On November 14, 2012, the Company was forced to file for bankruptcy.  In support of its bankruptcy petition, Overseas filed the Declaration of Captain Robert E. Johnston, an Overseas Senior Vice President and Head of its U.S. Flag Strategic Business United (the "Johnston Declaration").  The Johnston Declaration stated that Overseas' need to withdraw its previously-issued financial statements was one of the "main factors" that caused the Company to file for bankruptcy.  As set forth in the Johnston Declaration, because of Overseas' announcement that it was withdrawing its financial statements from 2009 through the first two quarters of 2012, the Company was "foreclosed from accessing the commercial paper, capital and credit markets," and thus, the Company was unable to obtain the financing it needed to run its business.

69.     The Company's need to withdraw its previously-issued financial statements also negatively impacted the Company's principal credit facilities, which are critical to its ability to

operate its business. The Company's two credit facilities consisted of: (i) a 2006 Credit Agreement in the amount of $1.5 billion, which expires in February 2013 and was approximately fully drawn as of the time of its bankruptcy filing; and (ii) a 2011 Credit Agreement in the amount of $900 million which was supposed to replace the 2006 Credit Agreement.

70.    The Johnston Declaration stated that, because of the Company's ongoing investigation into the inaccuracy of its prior financial statements, it is unable to timely file its financial statements for the third quarter of 2012, and this failure "arguably constitutes an event of default under [] the 2006 Credit Agreement." Moreover, according to the Johnston Declaration, "as a result of" the facts revealed in Overseas' October 22 Form 8-K, Overseas has received letters from the agents of both credit facilities reserving their rights to "assert that one or more events of default occurred."

71.    The Company's need to withdraw its previously-issued financial statements has had additional negative material consequences for investors in the Notes. In particular, the Johnston Declaration stated that Overseas' inability to timely file its financial statements for the third quarter of 2012 also "arguably constitutes an event of default under" the Notes themselves.

72.    At the close of business on November 20, 2012, the Notes were trading at 41.25 as a percentage of the initial par value, or approximately 58% below the Offering price.

## COUNT I

### For Violations Of Section 11 Of The Securities Act
### (Against The Individual Defendants, The Underwriter Defendants, and PwC)

73.    Plaintiff repeats and realleges the allegations above. Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct, which are not elements of a Securities Act claim.

74.     This claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all persons who purchased or otherwise acquired the Notes in or traceable to the Offering, against the Individual Defendants, the Underwriter Defendants, and PwC.

75.     The Registration Statement contained untrue statements of material facts, as set forth more fully above.

76.     The Individual Defendants were signatories of the Registration Statement both by virtue of having signed the Registration Statement at the time it was initially filed and by having signed Overseas' 2009 Form 10-K filed with the SEC on March 1, 2010. The Defendants named in this Count were responsible for the false statements incorporated in the Offering Materials and are therefore liable to the members of the Class who purchased the Notes.

77.     The Underwriter Defendants were underwriters of the Offering. The Underwriter Defendants were required to perform due diligence on the Offering and are therefore liable to the members of the Class who purchased the Notes.

78.     PwC consented to the incorporation into the Registration Statement of its reports certifying the accuracy of Overseas' financial statements for the year ended December 31, 2009 and the effectiveness of Overseas' internal controls as of that date as identified in ¶60. Those statements were false. PwC is therefore liable to the members of the Class who purchased the Notes.

79.     Plaintiff and other members of the Class purchased the Notes issued pursuant to the Registration Statement.

80.     Plaintiff and other members of the Class purchased the Notes in or traceable to the Offering conducted pursuant to the materially untrue Registration Statement and did not know, or

22

in the exercise of reasonable diligence could not have known, of the untruths and omissions contained therein.

81.     Plaintiff and the other members of the Class suffered substantial damages as a result of the untrue statements in the Registration Statement, as they either sold their Notes at prices below the Offering price or still held their Notes as of the date of the initial complaint containing claims under the Securities Act, when the price of the Notes was below the Offering price.

82.     This claim is brought within the applicable statute of limitations.

83.     By reason of the foregoing, the Defendants named in this count have violated Section 11 of the Securities Act.

## COUNT II

### For Violations Of Section 12(a)(2) Of The Securities Act
### (Against The Underwriter Defendants)

84.     Plaintiff repeats and realleges the allegations above.  Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct, which are not elements of a Securities Act claim.

85.     This claim is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77*l*(a)(2), on behalf of all persons who purchased or otherwise acquired the Notes in the Offering, against the Underwriter Defendants.

86.     The Underwriter Defendants were sellers, offerors, and/or solicitors of sales of the Notes offered pursuant to the Registration Statement, which contained untrue statements of material fact, as set forth more fully above.

23

87.     Members of the Class purchased the Notes in the Offering conducted pursuant to the materially untrue Registration Statement and did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained therein.

88.     Members of the Class who purchased the Notes and still hold the Notes have sustained substantial damages as a result of the untrue statements of material fact in the Registration Statement, for which they hereby elect to rescind and tender their Notes to the Defendants sued in this count in return for the consideration paid with interest. Those members of the Class who have already sold their Notes acquired in the Offering pursuant to the materially untrue Offering Materials are entitled to rescissory damages from Defendants.

89.     This claim is brought within the applicable statute of limitations.

90.     By virtue of the foregoing, the Defendants named in this count violated Section 12(a)(2) of the Securities Act.

## COUNT III

### For Violations Of Section 15 Of The Securities Act
### (Against the Individual Defendants)

91.     Plaintiff repeats and realleges the allegations above. Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging or sounding in fraud or intentional or reckless misconduct, which are not elements of a Securities Act claim.

92.     This Count is asserted against the Individual Defendants for violations of Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of all members of the Class who purchased or otherwise acquired the Notes in or traceable to the Offering.

93.     At all relevant times, the Individual Defendants were controlling persons of the Company within the meaning of Section 15 of the Securities Act. At the time of the filing of the Registration Statement and other Offering Materials, Defendant Arntzen was the Chief

24

Executive Officer and President of Overseas, and a member of the Board of Directors. Similarly, Defendant Itkin was the Chief Financial Officer, Executive Vice President and Treasurer of Overseas.

94.     Defendants Arntzen, Itkin, and the other Individual Defendants, prior to and at the time of the Offering, participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Overseas' business affairs. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Overseas' business, financial condition and results of operations. The Individual Defendants participated in the preparation and dissemination of the Registration Statement and Prospectus Supplements, and otherwise participated in the process necessary to conduct the Offering. Because of their positions of control and authority as senior officers and/or directors of Overseas, the Individual Defendants were able to, and did, control the contents of the Registration Statement and Prospectus Supplements, which contained materially untrue information.

95.     By reason of the aforementioned conduct, the Individual Defendants are liable under Section 15 of the Securities Act to Plaintiff and members of the Class who purchased the Notes issued pursuant to the Registration Statement.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.      Determining that this action is a proper class action pursuant to Article 9 of the New York Civil Practice Law and Rules on behalf of the Class defined herein;

b.      Awarding all damages and other remedies set forth in the Securities Act in favor of Plaintiff and all members of the Class against Defendants in an amount to be proven at trial, including interest thereon;

c.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d.     Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a jury trial.

Dated: November 21, 2012
       New York, New York

                                 **BERNSTEIN LITOWITZ BERGER**
                                 **& GROSSMANN LLP**

                                 By: _____

                                      Gerald H. Silk
                                      David Wales
                                      Avi Josefson

                                 1285 Avenue of the Americas
                                 New York, NY 10019
                                 Tel: (212) 554-1400
                                 Fax: (212) 554-1444
                                 jerry@blbglaw.com
                                 dwales@blbglaw.com
                                 avi@blbglaw.com

                                 *Counsel for Plaintiff Paul Otto*
                                 *Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP,<br><br>    Defendants. | Index No.<br><br><u>**SUMMONS**</u><br><br><u>Date Index No. Purchased</u>:<br><br>November 21, 2012 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:      New York, New York          Respectfully submitted,
            November 21, 2012


                                        **BERNSTEIN LITOWITZ BERGER**
                                        **& GROSSMANN LLP**


                                        Gerald H. Silk
                                        David L. Wales
                                        Avi Josefson
                                        1285 Avenue of the Americas, 38th Floor
                                        New York, NY 10019
                                        Tel:    (212) 554-1400
                                        Fax:    (212) 554-1444


                                        *Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP, <br><br> Defendants. | Index No. 654037/12 <br><br><br> **SUMMONS** <br><br><br> **Date Index No. Purchased:** <br><br> November 21, 2012 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen <br> 1018 Weed Street <br> New Canaan, CT 06840-4027 | Myles R. Itkin <br> 1160 Park Avenue, 19A <br> New York, NY 10128-1212 |
| Glenn Allen Andreas, III <br> 200 E. 71st Street, Apt. 17C <br> New York, NY 10021-5137 | Alan R. Batkin <br> 23 Hurlingham Drive <br> Greenwich, CT 06831-2740 |
| Thomas B. Coleman <br> 15 Audubon Pl. <br> New Orleans, LA 70118-5525 | Charles A. Fribourg <br> 1010 5th Ave., Apt. 3C <br> New York, NY 10028-0130 |
| Stanley Komaroff <br> 910 Park Avenue, Apt. 5S <br> New York, NY 10075-0277 | Solomon N. Merkin <br> 146 Maple Street <br> Englewood, NJ 07631-3630 |
| Joel I. Picket <br> 100 Sunrise Avenue, PH 11 <br> Palm Beach, FL 33480-7446 | Ariel Recanati <br> 666 Third Avenue, Floor 6 <br> New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

Gerald H. Silk
David L. Wales
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444


*Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

        Plaintiff,

    v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

        Defendants.

Index No.

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933.  Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York            Respectfully submitted,
         November 21, 2012


         **BERNSTEIN LITOWITZ BERGER**
         **& GROSSMANN LLP**

         Gerald H. Silk
         David L. Wales
         Avi Josefson
         1285 Avenue of the Americas, 38th Floor
         New York, NY 10019
         Tel:    (212) 554-1400
         Fax:    (212) 554-1444


         *Attorneys for Paul Otto Koether IRA Rollover*

FILED: NEW YORK COUNTY CLERK 11/21/2012

NYSCEF DOC. NO. 1

INDEX NO. 654037/2012

RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

*NOV 26 2012*

*Accepted Service*

---

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

Plaintiff,

v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

Defendants.

Index No. 654037/2012

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

---

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:    New York, New York          Respectfully submitted,
          November 21, 2012


                                      **BERNSTEIN LITOWITZ BERGER**
                                      **& GROSSMANN LLP**


                                      *David L. Wales*

                                      Gerald H. Silk
                                      David L. Wales
                                      Avi Josefson
                                      1285 Avenue of the Americas, 38th Floor
                                      New York, NY 10019
                                      Tel:    (212) 554-1400
                                      Fax:    (212) 554-1444


                                      *Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP,<br><br>    Defendants. | Index No.<br><br><br>**SUMMONS**<br><br><br><u>Date Index No. Purchased:</u><br><br>November 21, 2012 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York       Respectfully submitted,
           November 21, 2012

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

Gerald H. Silk
David L. Wales
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:   (212) 554-1400
Fax:   (212) 554-1444

*Attorneys for Paul Otto Koether IRA Rollover*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - -x

Paul Otto Koether IRA Rollover, On Behalf of :
Itself and All Others Similarly Situated,     :
                                              :
                         Plaintiff,           :
                                              :
            v.                                :
                                              :
Morten Arntzen, Myles R. Itkin, Oudi Recanati, :
G. Allen Andreas III, Alan R. Batkin,         :
Thomas B. Coleman, Charles A. Fribourg,       :
Stanley Komaroff, Solomon N. Merkin,          :
Joel I. Picket, Ariel Recanati, Thomas F. Robards, :
Jean-Paul Vettier, Michael J. Zimmerman,      :
Citigroup Global Markets Inc., Morgan Stanley :
& Co. Incorporated, HSBC Securities (USA) Inc., :
Deutsche Bank Securities Inc., DnB NOR Markets, :
Inc., Goldman, Sachs & Co., ING Financial     :
Markets LLC, PricewaterhouseCoopers LLP,      :
                                              :
                         Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - -x

<u>CLASS ACTION</u>

**COMPLAINT FOR VIOLATIONS**
**OF SECTIONS 11, 12 AND 15 OF**
**THE SECURITIES ACT OF 1933**

<u>JURY TRIAL DEMANDED</u>

NYSCEF DOC. NO. 1

RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK



---

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

    Plaintiff,

    v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

    Defendants.

Index No. 654057/12

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

---

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


                                     **BERNSTEIN LITOWITZ BERGER**
                                     **& GROSSMANN LLP**


                                     Gerald H. Silk
                                     David L. Wales
                                     Avi Josefson
                                     1285 Avenue of the Americas, 38th Floor
                                     New York, NY 10019
                                     Tel:   (212) 554-1400
                                     Fax:   (212) 554-1444


                                     *Attorneys for Paul Otto Koether IRA Rollover*

NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

SERVED  230 PARK
11/28/12
@ 3 PM

---

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

        Plaintiff,

    v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

        Defendants.

Index No. 654037/2012

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

---

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:    New York, New York       Respectfully submitted,
          November 21, 2012

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

Gerald H. Silk
David L. Wales
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:    (212) 554-1400
Fax:   (212) 554-1444

*Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

      Plaintiff,

    v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

      Defendants.

Index No. 654037/2012

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

RIDER

Thomas F. Robards
54 Brinton Hill Road
Salisbury, CT 06031-1014

Jean-Paul Vettier
Overseas Shipholding Group, Inc.
666 Third Avenue
New York, NY 10017

Michael J. Zimmerman
177 Wells Hill Road
Lakeville, CT 06039-2202

Citigroup Global Markets Inc.
388 Greenwich Street
New York, NY 10013

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, NY 10036

HSBC Securities (USA) Inc.
452 5th Avenue
New York, NY 10018

Deutsche Bank Securities Inc.
60 Wall Street
New York, NY 10005

DnB NOR Markets, Inc.
Dronning Eufemias Gate 30
0191 Oslo, Norway

Goldman, Sachs & Co.
200 West Street
New York, NY 10282

ING Financial Markets LLC
1325 Avenue of the Americas
New York, NY 10019

PricewaterhouseCoopers LLP
1177 Avenue of the Americas
New York, NY 10036

RIDER

Morten S. Arntzen
1018 Weed Street
New Canaan, CT 06840-4027

Myles R. Itkin
1160 Park Avenue, 19A
New York, NY 10128-1212

Glenn Allen Andreas, III
200 E. 71st Street, Apt. 17C
New York, NY 10021-5137

Alan R. Batkin
23 Hurlingham Drive
Greenwich, CT 06831-2740

Thomas B. Coleman
15 Audubon Pl.
New Orleans, LA 70118-5525

Charles A. Fribourg
1010 5th Ave., Apt. 3C
New York, NY 10028-0130

Stanley Komaroff
910 Park Avenue, Apt. 5S
New York, NY 10075-0277

Solomon N. Merkin
146 Maple Street
Englewood, NJ 07631-3630

Joel I. Picket
100 Sunrise Avenue, PH 11
Palm Beach, FL 33480-7446

Ariel Recanati
666 Third Avenue, Floor 6
New York, NY 10017-4064

Oudi Recanati
Overseas Shipholding Group, Inc.
666 Third Avenue
New York, NY 10017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF New York
_____x

Paul Otto Koether IRA Rollover, On Behalf of
Itself and All Others Similarly Situated,

                             Plaintiff/Petitioner,

          - against -                        Index No. 654037/2012

Morton Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP,

                           Defendant/Respondent.
_____x

## NOTICE OF COMMENCEMENT OF ACTION
## SUBJECT TO MANDATORY ELECTRONIC FILING

      PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.5-bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b) (3) of that Section.

      The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

      Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF website at www.nycourts.gov/efile or contact the NYSCEF Resource Center at 646-386-3033 or efile@courts.state.ny.us.

Dated: 11/21/2012

_David L. Wales /s/_ (Signature)         1285 Ave. of the Americas, Fl. 38_ (Address)

David L. Wales (Name)

Bernstein Litowitz Berger & Grossmann LLP (Firm Name)      212-554-1400 (Phone)

                                        dwales@blbglaw.com (E-Mail)

To:   See attached rider

4/8/11

NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

*received by hand ✓*
*11/28/12* JC

---

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

              Plaintiff,

    v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

              Defendants.

Index No. 654037/12

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

---

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:    New York, New York          Respectfully submitted,
          November 21, 2012


                                      **BERNSTEIN LITOWITZ BERGER**
                                      **& GROSSMANN LLP**

                                      Gerald H. Silk
                                      David L. Wales
                                      Avi Josefson
                                      1285 Avenue of the Americas, 38th Floor
                                      New York, NY 10019
                                      Tel:    (212) 554-1400
                                      Fax:    (212) 554-1444


                                      *Attorneys for Paul Otto Koether IRA Rollover*

FILED: NEW YORK COUNTY CLERK 11/21/2012                    INDEX NO. 654037/2012
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated, <br><br>              Plaintiff, <br><br> v. <br><br> Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP, <br><br>              Defendants. | Index No. 654037/2012 <br><br> **SUMMONS** <br><br> **Date Index No. Purchased:** <br><br> November 21, 2012 <br><br> LEGAL PAPER <br><br> NOV 26 2012 PM3.08 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen <br> 1018 Weed Street <br> New Canaan, CT 06840-4027 | Myles R. Itkin <br> 1160 Park Avenue, 19A <br> New York, NY 10128-1212 |
| Glenn Allen Andreas, III <br> 200 E. 71st Street, Apt. 17C <br> New York, NY 10021-5137 | Alan R. Batkin <br> 23 Hurlingham Drive <br> Greenwich, CT 06831-2740 |
| Thomas B. Coleman <br> 15 Audubon Pl. <br> New Orleans, LA 70118-5525 | Charles A. Fribourg <br> 1010 5th Ave., Apt. 3C <br> New York, NY 10028-0130 |
| Stanley Komaroff <br> 910 Park Avenue, Apt. 5S <br> New York, NY 10075-0277 | Solomon N. Merkin <br> 146 Maple Street <br> Englewood, NJ 07631-3630 |
| Joel I. Picket <br> 100 Sunrise Avenue, PH 11 <br> Palm Beach, FL 33480-7446 | Ariel Recanati <br> 666 Third Avenue, Floor 6 <br> New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


                                     **BERNSTEIN LITOWITZ BERGER**
                                     **& GROSSMANN LLP**


                                     Gerald H. Silk
                                     David L. Wales
                                     Avi Josefson
                                     1285 Avenue of the Americas, 38th Floor
                                     New York, NY 10019
                                     Tel:    (212) 554-1400
                                     Fax:    (212) 554-1444


                                     *Attorneys for Paul Otto Koether IRA Rollover*

FILED: NEW YORK COUNTY CLERK 11/21/2012          INDEX NO. 654037/2012
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP,<br><br>     Defendants. | Index No. 654037/2012<br><br>**SUMMONS**<br><br>**Date Index No. Purchased:**<br><br>November 21, 2012 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York       Respectfully submitted,
          November 21, 2012

                           **BERNSTEIN LITOWITZ BERGER**
                           **& GROSSMANN LLP**

                           Gerald H. Silk
                           David L. Wales
                           Avi Josefson
                           1285 Avenue of the Americas, 38th Floor
                           New York, NY 10019
                           Tel:   (212) 554-1400
                           Fax:   (212) 554-1444

                           *Attorneys for Paul Otto Koether IRA Rollover*

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

        Plaintiff,

    v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

        Defendants.

Index No.

**SUMMONS**  654037/2012

**Date Index No. Purchased:**

November 21, 2012

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

Received 11/30/12

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:    New York, New York        Respectfully submitted,
             November 21, 2012

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

Gerald H. Silk
David L. Wales
Avi Josefson
1285 Avenue of the Americas, 38th Floor
New York, NY 10019
Tel:    (212) 554-1400
Fax:    (212) 554-1444

*Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

                                    Plaintiff,          Index No.

            v.

                                                        **SUMMONS**

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.                 **Date Index No. Purchased:**
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.                  November 21, 2012
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

                                    Defendants.

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:      New York, New York           Respectfully submitted,
            November 21, 2012


                    **BERNSTEIN LITOWITZ BERGER**
                      **& GROSSMANN LLP**


                    _[signature]_

                    Gerald H. Silk
                    David L. Wales
                    Avi Josefson
                    1285 Avenue of the Americas, 38th Floor
                    New York, NY 10019
                    Tel:    (212) 554-1400
                    Fax:    (212) 554-1444


                    _Attorneys for Paul Otto Koether IRA Rollover_

FILED: NEW YORK COUNTY CLERK 11/21/2012    Case 1:13-cv-02654-JPO Document 1    Filed 12/13/12    Page 82 of 165    INDEX NO. 654037/2012

NYSCEF DOC. NO. 1                                                        RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated, | Index No. |
| Plaintiff, | |
| v. | **SUMMONS** |
| Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP, | **Date Index No. Purchased:** November 21, 2012 |
| Defendants. | |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


                                     **BERNSTEIN LITOWITZ BERGER**
                                       **& GROSSMANN LLP**

                                     Gerald H. Silk
                                     David L. Wales
                                     Avi Josefson
                                     1285 Avenue of the Americas, 38th Floor
                                     New York, NY 10019
                                     Tel:    (212) 554-1400
                                     Fax:    (212) 554-1444


                                     *Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

Plaintiff,

v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

Defendants.

Index No.  654037/12

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:     New York, New York          Respectfully submitted,
           November 21, 2012

                                       BERNSTEIN LITOWITZ BERGER
                                          & GROSSMANN LLP

                                       _David L. Wales_

                                       Gerald H. Silk
                                       David L. Wales
                                       Avi Josefson
                                       1285 Avenue of the Americas, 38th Floor
                                       New York, NY 10019
                                       Tel:    (212) 554-1400
                                       Fax:    (212) 554-1444


                                       *Attorneys for Paul Otto Koether IRA Rollover*

FILED: NEW YORK COUNTY CLERK 11/21/2012

NYSCEF DOC. NO. 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated, | Index No. |
| Plaintiff, | |
| v. | **SUMMONS** |
| Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP, | **Date Index No. Purchased:** November 21, 2012 |
| Defendants. | |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket *<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


                                     **BERNSTEIN LITOWITZ BERGER
                                     & GROSSMANN LLP**


                                     Gerald H. Silk
                                     David L. Wales
                                     Avi Josefson
                                     1285 Avenue of the Americas, 38th Floor
                                     New York, NY 10019
                                     Tel:    (212) 554-1400
                                     Fax:    (212) 554-1444


                                     *Attorneys for Paul Otto Koether IRA Rollover*

FILED: NEW YORK COUNTY CLERK 11/21/2012

NYSCEF DOC. NO. 1

INDEX NO. 654037/2012

RECEIVED NYSCEF: 11/21/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

Plaintiff,

v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

Defendants.

Index No. 654037/2012

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

*Served by hand
on November 26, 2012
@ 12:32 pm
Service accepted by
S. Wayne*

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-513 7 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5 525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-027 7 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 1  1<br>Palm Beach, FL 33480-74 46 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:    New York, New York          Respectfully submitted,
          November 21, 2012


          **BERNSTEIN LITOWITZ BERGER**
          **& GROSSMANN LLP**

          Gerald H. Silk
          David L. Wales
          Avi Josefson
          1285 Avenue of the Americas, 38th Floor
          New York, NY 10019
          Tel:    (212) 554-1400
          Fax:    (212) 554-1444


          *Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP,<br><br>Defendants. | Index No.<br><br>**SUMMONS**<br><br>**Date Index No. Purchased:**<br><br>November 21, 2012 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York      Respectfully submitted,
         November 21, 2012

                        **BERNSTEIN LITOWITZ BERGER**
                          **& GROSSMANN LLP**

                        Gerald H. Silk
                        David L. Wales
                        Avi Josefson
                        1285 Avenue of the Americas, 38th Floor
                        New York, NY 10019
                        Tel:   (212) 554-1400
                        Fax:   (212) 554-1444

                        *Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated, | Index No. |
| Plaintiff, | |
| v. | **SUMMONS** |
| Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP, | **Date Index No. Purchased:** November 21, 2012 |
| Defendants. | |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati ✳<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933.  Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


                                   **BERNSTEIN LITOWITZ BERGER**
                                   **& GROSSMANN LLP**


                                   Gerald H. Silk
                                   David L. Wales
                                   Avi Josefson
                                   1285 Avenue of the Americas, 38th Floor
                                   New York, NY 10019
                                   Tel:    (212) 554-1400
                                   Fax:    (212) 554-1444


                                   *Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

Paul Otto Koether IRA Rollover, On Behalf
of Itself and All Others Similarly Situated,

        Plaintiff,

    v.

Morten Arntzen, Myles R. Itkin, Oudi
Recanati, G. Allen Andreas III, Alan R.
Batkin, Thomas B. Coleman, Charles A.
Fribourg, Stanley Komaroff, Solomon N.
Merkin, Joel I. Picket, Ariel Recanati,
Thomas F. Robards, Jean-Paul Vettier,
Michael J. Zimmerman, Citigroup Global
Markets Inc., Morgan Stanley & Co.
Incorporated, HSBC Securities (USA) Inc.,
Deutsche Bank Securities Inc., DnB NOR
Markets, Inc., Goldman, Sachs & Co., ING
Financial Markets LLC,
PricewaterhouseCoopers LLP,

        Defendants.

---

Index No.

**SUMMONS**

**Date Index No. Purchased:**

November 21, 2012

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


                                      **BERNSTEIN LITOWITZ BERGER**
                                      **& GROSSMANN LLP**


                                      Gerald H. Silk
                                      David L. Wales
                                      Avi Josefson
                                      1285 Avenue of the Americas, 38th Floor
                                      New York, NY 10019
                                      Tel:    (212) 554-1400
                                      Fax:    (212) 554-1444


                                      *Attorneys for Paul Otto Koether IRA Rollover*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>     v.<br><br>Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP,<br><br>        Defendants. | Index No.<br><br><br>**SUMMONS**<br><br><br>**Date Index No. Purchased:**<br><br>November 21, 2012 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier  ✶<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:     New York, New York              Respectfully submitted,
           November 21, 2012


                                           **BERNSTEIN LITOWITZ BERGER**
                                           **& GROSSMANN LLP**

                                           _/s/ David L. Wales_

                                           Gerald H. Silk
                                           David L. Wales
                                           Avi Josefson
                                           1285 Avenue of the Americas, 38th Floor
                                           New York, NY 10019
                                           Tel:    (212) 554-1400
                                           Fax:    (212) 554-1444


                                           _Attorneys for Paul Otto Koether IRA Rollover_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Morten Arntzen, Myles R. Itkin, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, Michael J. Zimmerman, Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated, HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DnB NOR Markets, Inc., Goldman, Sachs & Co., ING Financial Markets LLC, PricewaterhouseCoopers LLP,<br><br>        Defendants. | Index No.<br><br><br>**SUMMONS**<br><br><br>**Date Index No. Purchased:**<br><br>November 21, 2012 |

**TO THE ABOVE-NAMED DEFENDANTS:**

| | |
|---|---|
| Morten S. Arntzen<br>1018 Weed Street<br>New Canaan, CT 06840-4027 | Myles R. Itkin<br>1160 Park Avenue, 19A<br>New York, NY 10128-1212 |
| Glenn Allen Andreas, III<br>200 E. 71st Street, Apt. 17C<br>New York, NY 10021-5137 | Alan R. Batkin<br>23 Hurlingham Drive<br>Greenwich, CT 06831-2740 |
| Thomas B. Coleman<br>15 Audubon Pl.<br>New Orleans, LA 70118-5525 | Charles A. Fribourg<br>1010 5th Ave., Apt. 3C<br>New York, NY 10028-0130 |
| Stanley Komaroff<br>910 Park Avenue, Apt. 5S<br>New York, NY 10075-0277 | Solomon N. Merkin<br>146 Maple Street<br>Englewood, NJ 07631-3630 |
| Joel I. Picket<br>100 Sunrise Avenue, PH 11<br>Palm Beach, FL 33480-7446 | Ariel Recanati<br>666 Third Avenue, Floor 6<br>New York, NY 10017-4064 |

| | |
|---|---|
| Oudi Recanati<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Thomas F. Robards<br>54 Brinton Hill Road<br>Salisbury, CT 06031-1014 |
| Jean-Paul Vettier<br>Overseas Shipholding Group, Inc.<br>666 Third Avenue<br>New York, NY 10017 | Michael J. Zimmerman<br>177 Wells Hill Road<br>Lakeville, CT 06039-2202 |
| Citigroup Global Markets Inc.<br>388 Greenwich Street<br>New York, NY 10013 | Morgan Stanley & Co. Incorporated<br>1585 Broadway<br>New York, NY 10036 - |
| HSBC Securities (USA) Inc.<br>452 5th Avenue<br>New York, NY 10018 | Deutsche Bank Securities Inc.<br>60 Wall Street<br>New York, NY 10005 |
| DnB NOR Markets, Inc.<br>Dronning Eufemias Gate 30<br>0191 Oslo, Norway | Goldman, Sachs & Co.<br>200 West Street<br>New York, NY 10282 |
| ING Financial Markets LLC<br>1325 Avenue of the Americas<br>New York, NY 10019 | PricewaterhouseCoopers LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 |

You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or if the complaint is not served with this summons, to serve notice of appearance, on the plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for relief demanded herein.

Venue is proper in this Court pursuant to Section 22 of the Securities Act of 1933. Venue is also proper pursuant to CPLR § 503 and plaintiff has designated New York County as the place of trial.

Dated:   New York, New York          Respectfully submitted,
         November 21, 2012


                                     **BERNSTEIN LITOWITZ BERGER**
                                     **& GROSSMANN LLP**

                                     _David L. Wales_

                                     Gerald H. Silk
                                     David L. Wales
                                     Avi Josefson
                                     1285 Avenue of the Americas, 38th Floor
                                     New York, NY 10019
                                     Tel:    (212) 554-1400
                                     Fax:    (212) 554-1444


                                     _Attorneys for Paul Otto Koether IRA Rollover_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated | INDEX NO.: 654037/12 |

                                    V.                          *Plaintiff*

Morten Arntzen, et al.,

                                                              *Defendant(s)*

---

# AFFIDAVIT OF SERVICE

State of New York      }
County of New York   }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York.

That on **11/26/2012** at **2:02 PM** at **1325 Avenue Of The Americas, New York, NY 10019**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **ING Financial Markets LLC**, a domestic corporation,

by delivering thereat a true copy of each to **Kathleen Mangual** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Female
Skin :  Brown
Hair : Blonde
Age : 22 - 35 Yrs.
Height : 5' 4" - 5' 8"
Weight :131-160 Lbs.
Other :

Sworn to before me this
26th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Nicholas DiCanio
License No.1400308

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated

INDEX NO.: 654037/12

V.

*Plaintiff*

Morten Arntzen, et al.,

*Defendant(s)*

# AFFIDAVIT OF SERVICE

State of New York    }
County of New York   } ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York

That on **11/26/2012** at **12:39 PM** at **300 Madison Avenue, New York, NY 10036**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on PricewaterhouseCoopers LLP, a domestic limited liability partnership,

by delivering thereat a true copy of each to **Shelly Alleyne** personally,

deponent knew said limited liability partnership so served to be the limited liability partnership described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Female
Skin :  Black
Hair : Black
Age : 36 - 50 Yrs.
Height : 5' 9" - 6' 0"
Weight :Over 200 Lbs.
Other : Glasses

Sworn to before me this
26th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Nicholas DiCanio
License No.1400308

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX NO.: 654037/12

Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated

                                          V.                    *Plaintiff*

Morten Arntzen, et al.,

                                                            *Defendant(s)*

# AFFIDAVIT OF SERVICE

State of New York        }
County of New York    }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Old Bridge, New Jersey.

That on **11/23/2012 at 2:39 PM at 452 Fifth Avenue, New York, NY 10018**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **HSBC Securities (USA), Inc.**, a domestic corporation,

by delivering thereat a true copy of each to **Debika Burahee** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Female
Skin :  Brown
Hair : Brown
Age : 22 - 35 Yrs.
Height : 5' 4" - 5' 8"
Weight :100-130 Lbs.
Other :

Sworn to before me this
26th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Andrew  Botwinick
License No.1305403

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

NYSCEF DOC. NO. 6                                                          RECEIVED NYSCEF: 12/04/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly
Situated

INDEX NO.: 654037/12

V.                                          *Plaintiff*

Morten Arntzen, et al.,

*Defendant(s)*

## AFFIDAVIT OF SERVICE

State of New York        }
County of New York      }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York.

That on 11/23/2012 at 12:00 PM at 200 West Street , New York, NY 10282

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic
Filing**

on **Goldman, Sachs & Co.,** a domestic corporation,

by delivering thereat a true copy of each to **Joanna M. Lane** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew
said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Female
Skin :  White
Hair : Black
Age : 36 - 50 Yrs.
Height : 5' 4" - 5' 8"
Weight :100-130 Lbs.
Other :

Sworn to before me this
26th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Nicholas DiCanio
License No.1400308

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

INDEX NO.: 654037/12

Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly
Situated

                                                                    *Plaintiff*
                                    V.

Morten Arntzen, et al.,

                                                                    *Defendant(s)*

# AFFIDAVIT OF SERVICE

State of New York      }
County of New York    }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Old Bridge, New Jersey.

That on **11/23/2012** at **10:56 AM** at **60 Wall Street, New York, NY 10005**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **Deutsche Bank Securities Inc.** , a domestic corporation,

by delivering thereat a true copy of each to **Kris Kwong** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Female
Skin :  Yellow
Hair : Red
Age : 36 - 50 Yrs.
Height : 5' 4" - 5' 8"
Weight :100-130 Lbs.
Other :

Sworn to before me this
26th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Andrew  Botwinick
License No.1305403

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

NYSCEF DOC. NO. 8                                                    RECEIVED NYSCEF: 12/04/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly
Situated

INDEX NO.: 654037/12

*Plaintiff*

v.

Morten Arntzen, et al.,

*Defendant(s)*

# AFFIDAVIT OF SERVICE

State of New York      }
County of New York    }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York.

That on **11/26/2012 at 9:46 AM at 388 Greenwich Street, New York, NY 10013**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **Citigroup Global Markets Inc.** , a domestic corporation,

by delivering thereat a true copy of each to **Fern Strauss** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Female
Skin : White
Hair : Brown/Blond
Age : 51 - 65 Yrs.
Height : 5' 4" – 5' 8"
Weight :131-160 Lbs.
Other :

Sworn to before me this
26th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Nicholas DiCanio
License No.1400308

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly Situated

INDEX NO.: 654037/12

*Plaintiff*

V.

Morten Arntzen, et al.,

*Defendant(s)*

# AFFIDAVIT OF SERVICE

State of New York          }
County of New York     }   ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York.

That on **11/26/2012 at 1:22 PM** at **1221 Avenue of the Americas, New York, NY, 10020**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **Morgan Stanley & Co. Incorporated**, a domestic corporation,

by delivering thereat a true copy of each to **Yoko Nitta** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

<u>Description of Person Served:</u>
Gender : Female
Skin : Yellow
Hair : Black
Age : 22 - 35 Yrs.
Height : 5' 4" - 5' 8"
Weight :161-200 Lbs.
Other : Glasses

Sworn to before me this
28th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Nicholas DiCanio
License No.1400308

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

NYSCEF DOC. NO. 10                                              RECEIVED NYSCEF: 12/04/2012

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

Paul Otto Koether IRA Rollover, On Behalf of Itself and All Others Similarly           INDEX NO.: 654037/12
Situated

v.                                    *Plaintiff*

Morten Arntzen, et al.,

                                                                *Defendant(s)*

# AFFIDAVIT OF SERVICE

State of New York        }
County of New York   }  ss.:

The undersigned, being duly sworn, deposes and says;

Deponent is not a party herein, is over 18 years of age and resides in Rye Brook, New York.

That on **11/28/2012 at 2:50 PM at 200 Park Avenue, 31st Floor, New York, NY 10166**

deponent served a(n) **Summons and Complaint, Notice of Commencement of Action Subject to Mandatory Electronic Filing**

on **DnB NOR Markets, Inc.**, a domestic corporation,

by delivering thereat a true copy of each to **Peter Cassizzi** personally,

deponent knew said corporation so served to be the corporation described in said documents as said defendant and knew said individual to be **Managing Agent** thereof.

Description of Person Served:
Gender : Male
Skin :  White
Hair : Brown
Age : 22 - 35 Yrs.
Height : 5' 9" - 6' 0"
Weight :161-200 Lbs.
Other : Glasses

Sworn to before me this
30th day of November, 2012

NOTARY PUBLIC
JOHN DICANIO
NOTARY PUBLIC STATE OF NEW YORK
WESTCHESTER COUNTY
LIC. # 01DI4977768
COMM EXP. 2/11/2015

Nicholas DiCanio
License No.1400308

Serving By Irving, Inc. | 233 Broadway, Suite 2201 | New York, NY 10279

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Paul Otto Koether IRA Rollover, On Behalf of      :     Index No. 654037/2012
Itself and All Others Similarly Situated,      :

     :

             Plaintiff,      :

        v      :

     :

Morten Arntzen, Myles R. Itkin, Oudi Recanati,      :
G. Allen Andreas III, Alan R. Batkin,      :     **AFFIDAVIT OF SERVICE**
Thomas B. Coleman, Charles A. Fribourg,      :
Stanley Komaroff, Solomon N. Merkin,      :
Joel I. Picket, Ariel Recanati, Thomas F. Robards,      :
Jean-Paul Vettier, Michael J. Zimmerman,      :
Citigroup Global Markets Inc., Morgan Stanley      :
& Co. Incorporated, HSBC Securities (USA) Inc.,      :
Deutsche Bank Securities Inc., DnB NOR Markets,      :
Inc., Goldman, Sachs & Co., ING Financial      :
Markets LLC, PricewaterhouseCoopers LLP,      :

     :

             Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

State of New York    )
County of New York )  SS:

      Errol G. Hall, being duly sworn deposes and says: that I am not a party to the action, I am over the age of eighteen and reside in Suffolk County, New York.

      That on the 29th day of November 2012, I served by personal service a copy of the Summons, Complaint and the Notice of Commencement of Action Subject to Mandatory Electronic Filing on defendants Morten Arntzen, Oudi Recanati, G. Allen Andreas III, Alan R. Batkin, Thomas B. Coleman, Charles A. Fribourg, Stanley Komaroff, Solomon N. Merkin, Joel I. Picket, Ariel Recanati, Thomas F. Robards, Jean-Paul Vettier, and Michael J. Zimmerman at the law firm of Paul, Weiss, Rifkind, Wharton & Garrison, LLP, at 1285 Avenue of the Americas, New York, NY, 10019, by leaving true copies of the same with Sylvia Andreev, the Managing Clerk.

      Ms. Andreev is a white female, approximately thirty years of age, with blond hair and medium build, and about five feet seven inches tall.

Errol G. Hall

Sworn to before me
this 5 day of December 2012

Notary Public ROGER HANSEN
Notary Public, State of New York
No. 02HA4949318
Qualified in New York County
Commission Expires April 3, 20__

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Paul Otto Koether IRA Rollover, On Behalf of          :          **Index No. 654037/2012**
Itself and All Others Similarly Situated,
                                                      :
                                     Plaintiff,       :

            v                                         :

                                                      :
Morten Arntzen, Myles R. Itkin, Oudi Recanati,        :
G. Allen Andreas III, Alan R. Batkin,                 :
Thomas B. Coleman, Charles A. Fribourg,               :          **AFFIDAVIT OF SERVICE**
Stanley Komaroff, Solomon N. Merkin,                  :
Joel I. Picket, Ariel Recanati, Thomas F. Robards,    :
Jean-Paul Vettier, Michael J. Zimmerman,              :
Citigroup Global Markets Inc., Morgan Stanley         :
& Co. Incorporated, HSBC Securities (USA) Inc.,       :
Deutsche Bank Securities Inc., DnB NOR Markets,       :
Inc., Goldman, Sachs & Co., ING Financial             :
Markets LLC, PricewaterhouseCoopers LLP,              :
                                                      :
                                     Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

State of New York       )
County of New York  )  SS:


        Errol G. Hall, being duly sworn deposes and says: that I am not a party to the action, I am
over the age of eighteen and reside in Suffolk County, New York.

        That on the 30th day of November 2012, I served by personal service a copy of the
Summons, Complaint and the Notice of Commencement of Action Subject to Mandatory
Electronic Filing on defendant Myles R. Itkin at the law firm of Dechert, LLP, at 1095 Avenue
of the Americas, New York, NY, 10036, by leaving true copies of the same with Luis A. Lopez,
the Managing Clerk.

        Mr. Lopez is an Hispanic male, approximately 55 to 60 years of age, with black hair and
medium build, and about five feet seven inches tall and wears glasses.

Errol G. Hall

Sworn to before me
this 5th day of December 2012

Notary Public

ROCHELLE FEDER HANSEN
Notary Public, State of New York
No. 02HA4949318
Qualified in New York County
Commission Expires April 3, 20__

EXHIBIT B

EX-1.1 2 v178545_ex1-1.htm

**Exhibit 1.1**

$300,000,000

OVERSEAS SHIPHOLDING GROUP, INC.

8.125% Senior Notes due 2018

<u>Underwriting Agreement</u>

March 24, 2010

Citigroup Global Markets Inc.
Morgan Stanley & Co. Incorporated
HSBC Securities (USA) Inc.

> As Representatives of the
> several Underwriters listed
> in Schedule 1 hereto

> c/o Citigroup Global Markets Inc.
>     388 Greenwich Street,
> New York, New York 10013

> c/o Morgan Stanley & Co. Incorporated
> 1585 Broadway
> New York, New York 10036

> c/o HSBC Securities (USA) Inc.
> 452 Fifth Avenue, 3rd Floor
> New York, NY 10018

Ladies and Gentlemen:

Overseas Shipholding Group, Inc., a Delaware corporation (the "Company"), proposes to issue and sell to the several Underwriters listed in Schedule 1 hereto (the "Underwriters"), for whom you are acting as representatives (the "Representatives"), $300,000,000 principal amount of its 8.125% Senior Notes due 2018 (the "Notes"). The Notes will be issued pursuant to an Indenture to be dated as of March 29, 2010 (the "Indenture") between the Company and The Bank of New York Mellon Trust Company, N.A. as trustee (the "Trustee").

The Company hereby confirms its agreement with the several Underwriters concerning the purchase and sale of the Notes, as follows:

1. <u>Registration Statement.</u> The Company has prepared and filed with the Securities and Exchange Commission (the "Commission") under the Securities Act of 1933, as amended, and the rules and regulations of the Commission thereunder (collectively, the "Securities Act"), a registration statement on Form S-3 (File No. 333-165592), including a prospectus, relating to the Notes. Such registration statement, as amended at the time it became effective, including the information, if any, deemed pursuant to Rule 430A, 430B or 430C under the Securities Act to be part of the registration statement at the time of its effectiveness ("Rule 430 Information"), is referred to herein as the "Registration Statement"; and as used herein, the term "Preliminary Prospectus" means each prospectus included in such registration statement (and any amendments thereto) before its effectiveness, any prospectus filed with the Commission pursuant to Rule 424(a) under the Securities Act and the prospectus included in the Registration Statement at the time of its effectiveness that omits Rule 430 Information, and the term "Prospectus" means the prospectus in the form first used (or made available upon request of purchasers pursuant to Rule 173 under the Securities Act) in connection with confirmation of sales of the Notes. Any reference in this Agreement to the Registration Statement, any Preliminary Prospectus or the Prospectus shall be deemed to refer to and include the documents incorporated by reference therein pursuant to Item 12 of Form S-3 under the Securities Act, as of the effective date of the Registration Statement or the date of such Preliminary Prospectus or the Prospectus, as the case may be and any reference to "amend", "amendment" or "supplement" with respect to the Registration Statement, any Preliminary Prospectus or the Prospectus shall be deemed to refer to and include any documents filed after such date under the Securities Exchange Act of 1934, as amended, and the rules and regulations of the Commission thereunder (collectively, the "Exchange Act") that are

deemed to be incorporated by reference therein.   Capitalized terms used but not defined herein shall have the meanings given to such terms in the Registration Statement and the Prospectus.

At or prior to the time when sales of the Notes were first made (the "Time of Sale"), the Company had prepared the following information (collectively, the "Time of Sale Information"): a Preliminary Prospectus dated March 22, 2010, and each "free-writing prospectus" (as defined pursuant to Rule 405 under the Securities Act) listed on Annex B hereto as constituting part of the Time of Sale Information.

2. <u>Purchase of the Notes</u>. (a)  The Company agrees to issue and sell the Notes to the several Underwriters as provided in this Agreement, and each Underwriter, on the basis of the representations, warranties and agreements set forth herein and subject to the conditions set forth herein, agrees, severally and not jointly, to purchase from the Company the respective principal amount of Notes set forth opposite such Underwriter's name in Schedule 1 hereto at a price equal 96.813% of the principal amount thereof.  The Company will not be obligated to deliver any of the Notes except upon payment for all the Notes to be purchased as provided herein.

(b) The Underwriters hereby inform the Company that they intend to make a public offering of the Notes as soon after the effectiveness of this Agreement as in the judgment of the Representatives is advisable, and initially to offer the Notes on the terms set forth in the Prospectus.  The Company acknowledges and agrees that the Underwriters may offer and sell Notes to or through any affiliate of an Underwriter.

(c)       Payment for and delivery of the Notes shall be made at the offices of Simpson Thacher & Bartlett LLP no later than 12:00 P.M., New York City time, on March 29, 2010, or at such other time or place on the same or such other date, not later than the fifth business day thereafter, as the Representatives and the Company may agree upon in writing.  The time and date of such payment and delivery is referred to herein as the "Closing Date".

2

(d)       Payment for the Notes shall be made by wire transfer in immediately available funds to the account specified by the Company to the Representatives against delivery to the nominee of The Depository Trust Company, for the account of the Underwriters, of one or more global notes representing the Notes (collectively, the "Global Note"), with any transfer taxes payable in connection with the sale of the Notes duly paid by the Company. The Global Note will be made available for inspection by the Representatives not later than 1:00 P.M., New York City time, on the business day prior to the Closing Date.

(e)       The Company acknowledges and agrees that the Underwriters are acting solely in the capacity of an arm's length contractual counterparty to the Company with respect to the offering of Notes contemplated hereby (including in connection with determining the terms of the offering) and not as a financial advisor or a fiduciary to, or an agent of, the Company or any other person. Additionally, neither the Representatives nor any other Underwriter are advising the Company or any other person as to any legal, tax, investment, accounting or regulatory matters in any jurisdiction. The Company shall consult with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of the transactions contemplated hereby, and the Underwriters shall have no responsibility or liability to the Company with respect thereto. Any review by the Underwriters of the Company, the transactions contemplated hereby or other matters relating to such transactions will be performed solely for the benefit of the Underwriters and shall not be on behalf of the Company.

3. <u>Representations and Warranties of the Company</u>. The Company represents and warrants to each Underwriter that:

*(a) Preliminary Prospectus.* No order preventing or suspending the use of any Preliminary Prospectus has been issued by the Commission, and each Preliminary Prospectus included in the Time of Sale Information, at the time of filing thereof, complied in all material respects with the Securities Act, and no Preliminary Prospectus, at the time of filing thereof, contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided that the Company makes no representation and warranty with respect to any statements or omissions made in reliance upon and in conformity with information relating to any Underwriter furnished to the Company in writing by such Underwriter through the Representatives expressly for use in any Preliminary Prospectus, it being understood and agreed that only such information furnished by the Underwriters consists of the information described as such in Section 7(b) hereof.

*(b) Time of Sale Information.* The Time of Sale Information, at the Time of Sale, did not, and as of the Closing Date, will not, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; <u>provided</u> that the Company makes no representation and warranty with respect to any statements or omissions made in reliance upon and in conformity with information relating to any Underwriter furnished to the Company in writing by such Underwriter through the Representatives expressly for use in such Time of Sale Information, it being understood and agreed that only such information furnished by the Underwriters consists of the information described as such in Section 7(b) hereof. No statement of material fact included in the Prospectus has been omitted from the Time of Sale Information and no statement of material fact included in the Time of Sale Information that is required to be included in the Prospectus has been omitted therefrom.

3

(c) *Issuer Free Writing Prospectus.* The Company (including its agents and representatives, other than the Underwriters in their capacity as such) has not prepared, made, used, authorized, approved or referred to and will not prepare, use, authorize, approve or refer to any "written communication" (as defined in Rule 405 under the Securities Act) that constitutes an offer to sell or solicitation of an offer to buy the Notes (each such communication by the Company or its agents and representatives (other than a communication referred to in clauses (i) (ii) and (iii) below) an "Issuer Free Writing Prospectus") other than (i) any document not constituting a prospectus pursuant to Section 2(a)(10)(a) of the Securities Act or Rule 134 under the Securities Act, (ii) the Preliminary Prospectus, (iii) the Prospectus, (iv) the documents listed on Annex B hereto as constituting the Time of Sale Information and (v) any electronic road show or other written communications, in each case approved in writing in advance by the Representatives. Each such Issuer Free Writing Prospectus complied in all material respects with the Securities Act, has been or will be (within the time period specified in Rule 433) filed in accordance with the Securities Act (to the extent required thereby) and, when taken together with the Preliminary Prospectus accompanying, or delivered prior to delivery of, or filed prior to the first use of such Issuer Free Writing Prospectus, did not, and as of the Closing Date will not, contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided that the Company makes no representation and warranty with respect to any statements or omissions made in each such Issuer Free Writing Prospectus in reliance upon and in conformity with information relating to any Underwriter furnished to the Company in writing by such Underwriter through the Representatives expressly for use in any Issuer Free Writing Prospectus, it being understood and agreed that only such information furnished by the Underwriters consists of the information described as such in Section 7(b) hereof.

(d) *Registration Statement and Prospectus.* The Registration Statement is an "automatic shelf registration statement" as defined under Rule 405 of the Securities Act that has been filed with the Commission not earlier than three years prior to the date hereof; and no notice of objection of the Commission to the use of such registration statement or any post-effective amendment thereto pursuant to Rule 401(g)(2) under the Securities Act has been received by the Company. No order suspending the effectiveness of the Registration Statement has been issued by the Commission and no proceeding for that purpose or pursuant to Section 8A of the Securities Act against the Company or related to the offering has been initiated or threatened by the Commission; as of the applicable effective date of the Registration Statement and any amendment thereto, the Registration Statement complied and will comply in all material respects with the Securities Act and the Trust Indenture Act of 1939, as amended, and the rules and regulations of the Commission thereunder (collectively, the "Trust Indenture Act"), and did not and will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein not misleading; and as of the date of the Prospectus and any amendment or supplement thereto and as of the Closing Date, the Prospectus will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided that the Company makes no representation and warranty with respect to (i) that part of the Registration Statement that constitutes the Statement of Eligibility and Qualification (Form T-1) of the Trustee under the Trust Indenture Act or (ii) any statements or omissions made in reliance upon and in conformity with information relating to any Underwriter furnished to the Company in writing by such Underwriter through the Representatives expressly for use in the Registration Statement and the Prospectus and any amendment or supplement thereto, it being understood and agreed that only such information furnished by the Underwriters consists of the information described as such in Section 7(b) hereof.

4

*(e) Incorporated Documents.* The documents incorporated by reference in the Registration Statement, the Prospectus and the Time of Sale Information, when they were filed with the Commission conformed in all material respects to the requirements of the Exchange Act, and none of such documents contained any untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading; and any further documents so filed and incorporated by reference in the Registration Statement, the Prospectus or the Time of Sale Information, when such documents become effective or are filed with the Commission, as the case may be, will conform in all material respects to the requirements of the Securities Act or the Exchange Act, as applicable, and will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they were made, not misleading.

*(f) Financial Statements.* The financial statements and the related notes thereto included or incorporated by reference in the Registration Statement, the Time of Sale Information and the Prospectus comply in all material respects with the applicable requirements of the Securities Act and the Exchange Act, as applicable, and present fairly the financial position of the Company and its subsidiaries on a consolidated basis as of the dates indicated and the results of their operations and the changes in their cash flows for the periods specified; such financial statements have been prepared in conformity with generally accepted accounting principles in the United States applied on a consistent basis throughout the periods covered thereby, and any supporting schedules included or incorporated by reference in the Registration Statement present fairly the information required to be stated therein; and the other financial information included or incorporated by reference in each of the Registration Statement, the Time of Sale Information and the Prospectus has been derived from the accounting records of the Company and its subsidiaries and presents fairly in all material respects the information shown thereby.

*(g) No Material Adverse Change.* Since the date of the most recent financial statements of the Company included or incorporated by reference in the Registration Statement, the Time of Sale Information and the Prospectus (i) there has not been any change in the capital stock (other than the issuance of shares of the Company's common stock upon exercise of stock options, awards and warrants described as outstanding in, and the grant of options and awards under existing equity incentive plans described in, the Registration Statement, the Time of Sale Information and the Prospectus), or long-term debt of the Company or any of its subsidiaries (other than borrowings pursuant to existing credit facilities in the ordinary course of the business of the Company or any of its subsidiaries), or any dividend or distribution of any kind declared, set aside for payment, paid or made by the Company on any class of capital stock, or any material adverse change, or any development involving a prospective material adverse change, in or affecting the business, properties, management, financial condition, stockholders' equity or results of operations of the Company and its subsidiaries taken as a whole; (ii) neither the Company nor any of its subsidiaries has entered into any transaction or agreement (whether or not in the ordinary course of business) that is material to the Company and its subsidiaries taken as a whole or incurred any liability or obligation, direct or contingent, that is material to the Company and its subsidiaries taken as a whole; and (iii) the Company and its subsidiaries taken as a whole have not sustained any material loss or interference with its business from fire, explosion, flood or other calamity, whether or not covered by insurance, or from any labor disturbance or dispute or any action, order or decree of any court or arbitrator or governmental or regulatory authority; except in the case of clauses (i) through (iii) above as otherwise disclosed in the Registration Statement, the Time of Sale Information and the Prospectus.

5

(h) *Organization and Good Standing.* The Company and each of its subsidiaries have been duly organized and are validly existing and in good standing under the laws of their respective jurisdictions of organization, are duly qualified to do business and are in good standing in each jurisdiction in which their respective ownership or lease of property or the conduct of their respective businesses requires such qualification, and have all power and authority necessary to own or hold their respective properties and to conduct the businesses in which they are engaged, except where the failure to be so qualified, in good standing or have such power or authority would not, individually or in the aggregate, have a material adverse effect on the business, properties, management, financial condition, stockholders' equity or results of operations of the Company and its subsidiaries taken as a whole or on the performance by the Company of its obligations under the Notes (a "Material Adverse Effect").

(i) *Capitalization.* The Company has an authorized capitalization as set forth in the Registration Statement, the Time of Sale Information and the Prospectus under the heading "Capitalization"; all the outstanding shares of capital stock of the Company have been duly and validly authorized and issued and are fully paid and non-assessable and are not subject to any pre-emptive or similar rights; except as described in or expressly contemplated by the Time of Sale Information and the Prospectus, there are no outstanding rights (including, without limitation, pre-emptive rights), warrants or options to acquire, or instruments convertible into or exchangeable for, any shares of capital stock or other equity interest in the Company or any of its subsidiaries, or any contract, commitment, agreement, understanding or arrangement of any kind relating to the issuance of any capital stock of the Company or any subsidiary, any such convertible or exchangeable securities or any such rights, warrants or options; and all the outstanding shares of capital stock or other equity interest of each subsidiary owned, directly or indirectly, by the Company have been duly and validly authorized and issued, are fully paid and non-assessable (except, in the case of any foreign subsidiary, for directors' qualifying shares and except as otherwise described in the Registration Statement, the Time of Sale Information and the Prospectus) and are owned directly or indirectly by the Company, free and clear of any lien, charge, encumbrance, security interest, restriction on voting or transfer or any other claim of any third party.

(j) *Due Authorization.* The Company has full right, power and authority to execute and deliver this Agreement, the Notes and the Indenture (collectively, the "Transaction Documents"), and to perform its obligations hereunder and thereunder; and all action required to be taken for the due and proper authorization, execution and delivery of each of the Transaction Documents and the consummation of the transactions contemplated thereby has been duly and validly taken.

6

(k) *The Indenture.* The Indenture has been duly authorized by the Company and, upon effectiveness of the Registration Statement, was or will have been duly qualified under the Trust Indenture Act and, when duly executed and delivered in accordance with its terms by each of the parties thereto, will constitute a valid and legally binding agreement of the Company enforceable against the Company in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the enforcement of creditors' rights generally or by equitable principles relating to enforceability (collectively, the "Enforceability Exceptions").

(l) *The Notes.* The Notes have been duly authorized by the Company and, when duly executed, authenticated, issued and delivered as provided in the Indenture and paid for as provided herein, will be duly and validly issued and outstanding and will constitute valid and legally binding obligations of the Company enforceable against the Company in accordance with their terms, subject to the Enforceability Exceptions, and will be entitled to the benefits of the Indenture.

(m) *Underwriting Agreement.* This Agreement has been duly authorized, executed and delivered by the Company.

(n) *Descriptions of the Transaction Documents.* Each Transaction Document conforms in all material respects to the description thereof contained in the Registration Statement, the Time of Sale Information and the Prospectus.

(o) *No Violation or Default.* Neither the Company nor any of its subsidiaries is (i) in violation of its charter or by-laws or similar organizational documents; (ii) in default, and no event has occurred that, with notice or lapse of time or both, would constitute such a default, in the due performance or observance of any term, covenant or condition contained in any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Company or any of its subsidiaries is a party or by which the Company or any of its subsidiaries is bound or to which any of the property or assets of the Company or any of its subsidiaries is subject; or (iii) in violation of any law or statute or any judgment, order, rule or regulation of any court or arbitrator or governmental or regulatory authority, except, in the case of clauses (ii) and (iii) above, for any such default or violation that would not, individually or in the aggregate, have a Material Adverse Effect.

(p) *No Conflicts.* The execution, delivery and performance by the Company of each of the Transaction Documents, the issuance and sale of the Notes and compliance by the Company with the terms thereof and the consummation of the transactions contemplated by the Transaction Documents will not (i) conflict with or result in a breach or violation of any of the terms or provisions of, or constitute a default under, or result in the creation or imposition of any lien, charge or encumbrance upon any property or assets of the Company or any of its subsidiaries pursuant to, any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Company or any of its subsidiaries is a party or by which the Company or any of its subsidiaries is bound or to which any of the property or assets of the Company or any of its subsidiaries is subject, (ii) result in any violation of the provisions of the charter or by-laws or similar organizational documents of the Company or any of its subsidiaries or (iii) result in the violation of any law or statute or any judgment, order, rule or regulation of any court or arbitrator or governmental or regulatory authority, except, in the case of clauses (i) and (iii) above, for any such conflict, breach, violation, default, lien, charge or encumbrance that would not, individually or in the aggregate, have a Material Adverse Effect.

7

(q) *No Consents Required.* No consent, approval, authorization, order, license, registration or qualification of or with any court or arbitrator or governmental or regulatory authority is required for the execution, delivery and performance by the Company of each of the Transaction Documents, the issuance and sale of the Notes and compliance by the Company with the terms thereof and the consummation of the transactions contemplated by the Transaction Documents, except for the registration of the Notes under the Securities Act, the qualification of the Indenture under the Trust Indenture Act and such consents, approvals, authorizations, orders and registrations or qualifications as may be required by the Financial Industry Regulatory Authority, Inc. ("FINRA") and under applicable state securities laws in connection with the purchase and distribution of the Notes by the Underwriters.

(r) *Legal Proceedings.* Except as otherwise described in the Registration Statement, the Time of Sale Information and the Prospectus, there are no legal, governmental or regulatory investigations, actions, suits or proceedings pending to which the Company or any of its subsidiaries is or may be a party or to which any property of the Company or any of its subsidiaries is or may be the subject that, individually or in the aggregate, if determined adversely to the Company or any of its subsidiaries, could reasonably be expected to have a Material Adverse Effect; and, to the knowledge of the Company, no such investigations, actions, suits or proceedings are threatened or contemplated by any governmental or regulatory authority or threatened by others.

(s) *Independent Accountants.* PricewaterhouseCoopers LLP and Ernst & Young LLP, who have certified certain financial statements of the Company and its subsidiaries, are each an independent registered public accounting firm with respect to the Company and its subsidiaries within the applicable rules and regulations adopted by the Commission and the Public Company Accounting Oversight Board (United States) and as required by the Securities Act.

(t) *Title to Real and Personal Property.* The Company and its subsidiaries have good and marketable title in fee simple to, or have valid rights to lease or otherwise use, all items of real and personal property that are material to the respective businesses of the Company and its subsidiaries, in each case free and clear of all liens, encumbrances, claims and defects and imperfections of title except those that (i) do not materially interfere with the use made and proposed to be made of such property by the Company and its subsidiaries or (ii) could not reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect.

(u) *Title to Intellectual Property.* The Company and its subsidiaries own or possess adequate rights to use all material patents, patent applications, trademarks, service marks, trade names, trademark registrations, service mark registrations, copyrights, licenses and know-how (including trade secrets and other unpatented and/or unpatentable proprietary or confidential information, systems or procedures) necessary for the conduct of their respective businesses; and the Company and its subsidiaries have not received any notice of any claim of infringement or conflict with any such rights of others which, individually or in aggregate, would reasonably be expected to have a Material Adverse Effect.

8

(v) *Investment Company Act.* The Company is not and, after giving effect to the offering and sale of the Notes and the application of the proceeds thereof as described in the Registration Statement, the Time of Sale Information and the Prospectus, will not be an "investment company" or an entity "controlled" by an "investment company" within the meaning of the Investment Company Act of 1940, as amended, and the rules and regulations of the Commission thereunder (collectively, the "Investment Company Act").

(w) *Taxes.* Except as would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect, the Company and its subsidiaries have paid all federal, state, local and foreign taxes, other than those being contested in good faith and for which adequate reserves have been provided, and filed all tax returns required to be paid or filed through the date hereof; and there is no tax deficiency that has been, or would reasonably be expected to be, asserted against the Company or any of its subsidiaries or any of their respective properties or assets that would, individually or in the aggregate, have a Material Adverse Effect. All material tax liabilities have been adequately provided for in the financial statements of the Company to the extent required under generally accepted accounting principles and the Securities Act and Exchange Act.

(x) *Licenses and Permits.* The Company and its subsidiaries possess all licenses, certificates, permits and other authorizations issued by, and have made all declarations and filings with, the appropriate federal, state, local or foreign governmental or regulatory authorities that are necessary for the ownership or lease of their respective properties or the conduct of their respective businesses as described in the Registration Statement, the Time of Sale Information and the Prospectus, except where the failure to possess or make the same would not, individually or in the aggregate, have a Material Adverse Effect; and neither the Company nor any of its subsidiaries has received notice of any revocation or modification of any such license, certificate, permit or authorization or has any reason to believe that any such license, certificate, permit or authorization will not be renewed in the ordinary course, which could reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect.

(y) *No Labor Disputes.* No labor disturbance by or dispute with employees of the Company or any of its subsidiaries exists or, to the knowledge of the Company, is contemplated or threatened, in each case that would reasonably be expected, individually or in the aggregate, to have a Material Adverse Effect.

(z) *Compliance With Environmental Laws.* Except as otherwise disclosed in the Registration Statement, the Prospectus or the Time of Sale Information, the Company and its subsidiaries (i) are in compliance with, and have not violated, any and all applicable federal, state, local and foreign and international laws, rules, regulations, decisions and orders relating to the protection of human health and safety, the environment or natural resources or to hazardous or toxic substances or wastes, pollutants or contaminants (collectively, "Environmental Laws"); (ii) have received and are in compliance with all permits, licenses or other approvals required of them under applicable Environmental Laws to conduct their respective businesses; and (iii) have not received notice of any actual or potential liability under or relating to any Environmental Laws, including for the investigation or remediation of any disposal or release of hazardous or toxic substances or wastes, pollutants or contaminants, except in any such case for any such failure to comply with, or failure to receive required permits, licenses or approvals, or liability, as would not, individually or in the aggregate, have a Material Adverse Effect. Except as otherwise disclosed in the Registration Statement, the Prospectus or the Time of Sale Information, there are no proceedings that are pending or, to the knowledge of the Company, contemplated against the Company or any of its subsidiaries under any Environmental Laws in which a governmental entity is also a party, other than such proceedings regarding which it is reasonably believed no monetary sanctions of $100,000 or more will be imposed, and none of the Company and its subsidiaries anticipates material capital expenditures relating to any Environmental Laws.

9

(aa) *Compliance With ERISA.* Each employee benefit plan, within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), for which the Company or any member of its Controlled Group" (defined as any organization which is a member of a controlled group of corporations within the meaning of Section 414 of the Internal Revenue Code of 1986, as amended (the "Code")) would have any liability (each, a "Plan") has been maintained in compliance with its terms and the requirements of any applicable statutes, orders, rules and regulations, including but not limited to ERISA and the Code, except where the failure to be in compliance would not, individually or in the aggregate, have a Material Adverse Effect; no "reportable event" (within the meaning of Section 4043(c) of ERISA) has occurred or is reasonably expected to occur and no prohibited transaction, within the meaning of Section 406 of ERISA or Section 4975 of the Code, has occurred with respect to any such Plan excluding transactions effected pursuant to a statutory or administrative exemption; for each such Plan that is subject to the funding rules of Section 412 of the Code or Section 302 of ERISA, no Plan has failed, or is reasonably expected to fail, to satisfy the minimum funding standards (within the meaning of Section 302 of ERISA or Section 412 of the Code), whether or not waived, and the fair market value of the assets of each such Plan (excluding for these purposes accrued but unpaid contributions) exceeds the present value of all benefits accrued under such Plan determined based on those actuarial assumptions used to fund such Plan; neither the Company or any member of its Controlled Group has incurred, or reasonably expects to incur, any liability under Title IV of ERISA (other than contributions to the plan or premiums to the PBGC in the ordinary course and without default) in respect of a Plan (including a "multiemployer plan", within the meaning of Section 4001(c)(3) of ERISA); and each Plan that is intended to be qualified under Section 401(a) of the Code is so qualified and nothing has occurred, whether by action or by failure to act, which would cause the loss of such qualification.

(bb) *Disclosure Controls.* The Company and its subsidiaries maintain an effective system of "disclosure controls and procedures" (as defined in Rule 13a-15(e) of the Exchange Act) that is designed to ensure that information required to be disclosed by the Company in reports that it files or submits under the Exchange Act is recorded, processed, summarized and reported within the time periods specified in the Commission's rules and forms, including controls and procedures designed to ensure that such information is accumulated and communicated to the Company's management as appropriate to allow timely decisions regarding required disclosure. The Company and its subsidiaries have carried out evaluations of the effectiveness of their disclosure controls and procedures as required by Rule 13a-15 of the Exchange Act.

10

(cc) *Accounting Controls*. The Company and its subsidiaries maintain systems of "internal control over financial reporting" (as defined in Rule 13a-15(f) of the Exchange Act) that comply with the requirements of the Exchange Act and have been designed by, or under the supervision of, their respective principal executive and principal financial officers, or persons performing similar functions, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. The Company and its subsidiaries maintain internal accounting controls sufficient to provide reasonable assurance that (i) transactions are executed in accordance with management's general or specific authorizations; (ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and to maintain asset accountability; (iii) access to assets is permitted only in accordance with management's general or specific authorization; and (iv) the recorded accountability for assets is compared with the existing assets at reasonable intervals and appropriate action is taken with respect to any differences. There are no material weaknesses or significant deficiencies in the Company's internal controls.

(dd) *Insurance*. The Company and its subsidiaries have insurance covering their respective properties, operations, personnel and businesses, including protection and indemnity and business interruption insurance, which insurance is in amounts and insures against such losses and risks as are adequate to protect the Company and its subsidiaries taken as a whole and their respective businesses as consistent with industry practice; and neither the Company nor any of its subsidiaries has (i) received notice from any insurer or agent of such insurer that capital improvements or other expenditures are required or necessary to be made in order to continue such insurance or (ii) any reason to believe that it will not be able to renew its existing insurance coverage as and when such coverage expires or to obtain similar coverage from similar insurers as may be necessary to continue its business at a cost that could not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

(ee) *No Unlawful Payments*. Neither the Company nor any of its subsidiaries nor, to the knowledge of the Company, any director, officer, agent, employee or other person associated with or acting on behalf of the Company or any of its subsidiaries has (i) used any corporate funds for any unlawful contribution, gift, entertainment or other unlawful expense relating to political activity; (ii) made any direct or indirect unlawful payment to any foreign or domestic government official or employee from corporate funds; (iii) violated or is in violation of any provision of the Foreign Corrupt Practices Act of 1977; or (iv) made any bribe, rebate, payoff, influence payment, kickback or other unlawful payment.

(ff) *Compliance with Money Laundering Laws*. The operations of the Company and its subsidiaries are and have been conducted at all times in compliance with applicable financial recordkeeping and reporting requirements of the Currency and Foreign Transactions Reporting Act of 1970, as amended, the money laundering statutes of all jurisdictions, the rules and regulations thereunder and any related or similar rules, regulations or guidelines, issued, administered or enforced by any governmental agency (collectively, the "Money Laundering Laws") and no action, suit or proceeding by or before any court or governmental agency, authority or body or any arbitrator involving the Company or any of its subsidiaries with respect to the Money Laundering Laws is pending or, to the knowledge of the Company, threatened.

11

(gg) *Compliance with OFAC and other sanctions authorities.* None of the Company, any of its subsidiaries or, to the knowledge of the Company, any director, officer, agent, employee or affiliate of the Company or any of its subsidiaries is (i) currently subject to any U.S. sanctions administered by the Office of Foreign Assets Control of the U.S. Department of the Treasury ("OFAC"), the United Nations Security Council, the European Union, Her Majesty's Treasury, or other relevant sanctions authority (collectively, "Sanctions"), nor (ii) located, organized or resident in a country or territory that is the subject of Sanctions (including, without limitation, Burma/Myanmar, Cuba, Iran, North Korea, Sudan and Syria); and the Company will not use the proceeds of the offering of the Notes hereunder, or lend, contribute or otherwise make available such proceeds to any subsidiary, joint venture partner or other person or entity, in any manner that will result in a violation of Sanctions by any person (including any person participating in the offering, whether as underwriter, advisor, investor or otherwise). Except as otherwise disclosed in the Registration Statement, the Prospectus or the Time of Sale Information, the Company represents and covenants that, to the best of the Company's knowledge, it has not, within the past 5 years, engaged in and is not now engaged in any dealings or transactions with any person, or in any country or territory, that at the time of the dealing or transaction is or was the subject of Sanctions, except as described in the Company's February 19, 2008 letter to OFAC. The Company further represents that it will not engage in any dealings or transactions with any person, or in any country or territory, that at the time of the dealing or transaction is the subject of Sanctions, except as otherwise disclosed in the Registration Statement, the Prospectus or the Time of Sale Information.

(hh) *Solvency.* On and immediately after the Closing Date, the Company (after giving effect to the issuance of the Notes and the other transactions related thereto as described in the Registration Statement, the Time of Sale Information and the Prospectus) will be Solvent. As used in this paragraph, the term "Solvent" means, with respect to a particular date, that on such date (i) the present fair market value (or present fair saleable value) of the assets of the Company are not less than the total amount required to pay the liabilities of the Company on its total existing debts and liabilities (including contingent liabilities) as they become absolute and matured; (ii) the Company is able to realize upon its assets and pay its debts and other liabilities, contingent obligations and commitments as they mature and become due in the normal course of business; (iii) assuming consummation of the issuance of the Notes as contemplated by this Agreement, the Registration Statement, the Time of Sale Information and the Prospectus, the Company is not incurring debts or liabilities beyond its ability to pay as such debts and liabilities mature; (iv) the Company is not engaged in any business or transaction, and do not propose to engage in any business or transaction, for which its property would constitute unreasonably small capital after giving due consideration to the prevailing practice in the industry in which the Company is engaged; and (v) the Company is not a defendant in any civil action that would result in a judgment that the Company is or would become unable to satisfy.

(ii) *No Restrictions on Subsidiaries.* No subsidiary of the Company is currently prohibited, directly or indirectly, under any agreement or other instrument to which it is a party or is subject, from paying any dividends to the Company, from making any other distribution on such subsidiary's capital stock, from repaying to the Company any loans or advances to such subsidiary from the Company or from transferring any of such subsidiary's properties or assets to the Company or any other subsidiary of the Company.

12

(jj) *No Broker's Fees.*  Neither the Company nor any of its subsidiaries is a party to any contract agreement or understanding with any person (other than this Agreement) that would give rise to a valid claim against the Company or any of its subsidiaries or any Underwriter for a brokerage commission, finder's fee or like payment in connection with the offering and sale of the Notes.

(kk) *No Registration Rights.*  No person has the right to cause the Company or any of its subsidiaries to register any securities for sale under the Securities Act by reason of the filing of the Registration Statement with the Commission or the issuance and sale of the Notes.

(ll) *No Stabilization.*  The Company has not taken, directly or indirectly, any action designed to or that could reasonably be expected to cause or result in any stabilization or manipulation of the price of the Notes.

(mm) *Business with Cuba.*  The Company has complied with all provisions of Section 517.075, Florida Statutes (Chapter 92-198, Laws of Florida, as amended) relating to doing business with the Government of Cuba or with any person or affiliate located in Cuba.

(nn) *Margin Rules.*  Neither the issuance, sale and delivery of the Notes nor the application of the proceeds thereof by the Company as described in the Registration Statement, the Time of Sale Information and the Prospectus will violate Regulation T, U or X of the Board of Governors of the Federal Reserve System or any other regulation of such Board of Governors.

(oo) *Forward-Looking Statements.*  No forward-looking statement (within the meaning of Section 27A of the Securities Act and Section 21E of the Exchange Act) included or incorporated by reference in the Registration Statement, the Time of Sale Information or the Prospectus has been made or reaffirmed without a reasonable basis or has been disclosed other than in good faith.

(pp) *Sarbanes-Oxley Act.*  There is and has been no failure on the part of the Company or, to the knowledge of the Company, any of the Company's directors or officers, in their capacities as such, to comply in all material respects with any provision of the Sarbanes-Oxley Act of 2002 and the rules and regulations promulgated in connection therewith (the "Sarbanes-Oxley Act"), including Section 402 related to loans and Sections 302 and 906 related to certifications.

(qq) *Status under the Securities Act.*  The Company is not an ineligible issuer, and is a well-known seasoned issuer, in each case as defined under the Securities Act, in each case at the times specified in the Securities Act in connection with the offering of the Notes.

(rr) *Vessels.*  Each of the vessels owned by the Company or one of its subsidiaries has been duly registered in the name of the subsidiary of the Company that owns it under the laws and regulations and the flag of the nation of its registration and no other action is necessary to establish and perfect such subsidiary's title to and interest in such vessels as against any charterer or third party.

13

4. <u>Further Agreements of the Company</u>.  The Company covenants and agrees with each Underwriter that:

*(a) Required Filings.*  The Company will file the final Prospectus with the Commission within the time periods specified by Rule 424(b) and Rule 430A, 430B or 430C under the Securities Act, will file any Issuer Free Writing Prospectus (including the Term Sheet in the form of Annex C hereto) to the extent required by Rule 433 under the Securities Act; and will file promptly all reports and any definitive proxy or information statements required to be filed by the Company with the Commission pursuant to Section 13(a), 13(c), 14 or 15(d) of the Exchange Act subsequent to the date of the Prospectus and for so long as the delivery of a prospectus is required in connection with the offering or sale of the Notes; and the Company will furnish copies of the Prospectus and each Issuer Free Writing Prospectus (to the extent not previously delivered) to the Underwriters in New York City prior to 10:00 A.M., New York City time, on the business day next succeeding the date of this Agreement in such quantities as the Representatives may reasonably request. The Company will pay the registration fees for this offering within the time period required by Rule 456(b)(1)(i) under the Securities Act (without giving effect to the proviso therein) and in any event prior to the Closing Date.

*(b) Delivery of Copies.*  The Company will deliver, without charge, (i) to the Representatives, two signed copies of the Registration Statement as originally filed and each amendment thereto, in each case including all exhibits and consents filed therewith and documents incorporated by reference therein; and (ii) to each Underwriter (A) a conformed copy of the Registration Statement as originally filed and each amendment thereto, in each case including all exhibits and consents filed therewith and (B) during the Prospectus Delivery Period (as defined below), as many copies (including electronic copies) of the Prospectus (including all amendments and supplements thereto and documents incorporated by reference therein) and each Issuer Free Writing Prospectus as the Representatives may reasonably request.  As used herein, the term "Prospectus Delivery Period" means such period of time after the first date of the public offering of the Notes as in the opinion of counsel for the Underwriters a prospectus relating to the Notes is required by law to be delivered (or required to be delivered but for Rule 172 under the Securities Act) in connection with sales of the Notes by any Underwriter or dealer.

*(c) Amendments or Supplements; Issuer Free Writing Prospectus.*  Before making, preparing, using, authorizing, approving or referring to or filing any Issuer Free Writing Prospectus, and before filing any amendment or supplement to the Registration Statement or the Prospectus, whether before or after the time that the Registration Statement becomes effective, the Company will furnish to the Representatives and counsel for the Underwriters a copy of the proposed Issuer Free Writing Prospectus, amendment or supplement for review and will not make, prepare, use, authorize, approve or refer to or file any such Issuer Free Writing Prospectus  or file any such proposed amendments or supplements to which the Representatives reasonably object.

*(d) Notice to the Representatives.*  The Company will advise the Representatives promptly, and confirm such advice in writing, (i) when the Registration Statement has become effective; (ii) when any amendment to the Registration Statement has been filed or becomes effective; (iii) when any supplement to the Prospectus or any amendment to the Prospectus or any Issuer Free Writing Prospectus has been filed; (iv) of any request by the Commission for any amendment to the Registration Statement or any amendment or supplement to the Prospectus or the receipt of any comments from the Commission relating to the Registration Statement or any other request by the Commission for any additional information; (v) of the issuance by the Commission of any order suspending the effectiveness of the Registration Statement or preventing or suspending the use of any Preliminary Prospectus, any of the Time of Sale Information or the Prospectus or the initiation or threatening of any proceeding for that purpose or pursuant to Section 8A of the Securities Act; (vi) of the occurrence of any event within the Prospectus Delivery Period as a result of which the Prospectus, the Time of Sale Information or any Issuer Free Writing Prospectus as then amended or supplemented would include any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances existing when the Prospectus, the Time of Sale Information or any such Issuer Free Writing Prospectus  is delivered to a purchaser, not misleading; (vii) of the receipt by the Company of any notice of objection of the Commission to the use of the Registration Statement or any post-effective amendment thereto pursuant to Rule 401(g)(2) under the Securities Act; and (viii) of the receipt by the Company of any notice with respect to any suspension of the qualification of the Notes for offer and sale in any jurisdiction or the initiation or threatening of any proceeding for such purpose; and the Company will use its reasonable best efforts to prevent the issuance of any such order suspending the effectiveness of the Registration Statement, preventing or suspending the use of any Preliminary Prospectus, any of the Time of Sale Information or the Prospectus or suspending any such qualification of the Notes and, if any such order is issued, will obtain as soon as possible the withdrawal thereof.

14

*(e) Time of Sale Information.* If at any time prior to the Closing Date (i) any event shall occur or condition shall exist as a result of which the Time of Sale Information as then amended or supplemented would include any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements therein, in the light of the circumstances, not misleading or (ii) it is necessary to amend or supplement the Time of Sale Information to comply with law, the Company will immediately notify the Underwriters thereof and forthwith prepare and, subject to paragraph (c) above, file with the Commission (to the extent required) and furnish to the Underwriters and to such dealers as the Representatives may designate, such amendments or supplements to the Time of Sale Information as may be necessary so that the statements in the Time of Sale Information as so amended or supplemented will not, in the light of the circumstances, be misleading or so that the Time of Sale Information will comply with law.

*(f) Ongoing Compliance.* If during the Prospectus Delivery Period (i) any event shall occur or condition shall exist as a result of which the Prospectus as then amended or supplemented would include any untrue statement of a material fact or omit to state any material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances existing when the Prospectus is delivered to a purchaser, not misleading or (ii) it is necessary to amend or supplement the Prospectus to comply with law, the Company will immediately notify the Underwriters thereof and forthwith prepare and, subject to paragraph (c) above, file with the Commission and furnish to the Underwriters and to such dealers as the Representatives may designate, such amendments or supplements to the Prospectus as may be necessary so that the statements in the Prospectus as so amended or supplemented will not, in the light of the circumstances existing when the Prospectus is delivered to a purchaser, be misleading or so that the Prospectus will comply with law.

15

(g) *Blue Sky Compliance*. The Company will qualify the Notes for offer and sale under the securities or Blue Sky laws of such jurisdictions as the Representatives shall reasonably request and will continue such qualifications in effect so long as required for distribution of the Notes; provided that the Company shall not be required to (i) qualify as a foreign corporation or other entity or as a dealer in securities in any such jurisdiction where it would not otherwise be required to so qualify, (ii) file any general consent to service of process in any such jurisdiction or (iii) subject itself to taxation in any such jurisdiction if it is not otherwise so subject.

(h) *Earning Statement*. The Company will make generally available to its security holders and the Representatives as soon as practicable an earnings statement that satisfies the provisions of Section 11(a) of the Securities Act and the rules and regulations of the Commission promulgated thereunder covering a period of at least twelve months beginning with the first fiscal quarter of the Company occurring after the "effective date" (as defined in Rule 158) of the Registration Statement.

(i) *Clear Market*. During the period from the date hereof through and including the date that is 90 days after the date hereof, the Company will not, without the prior written consent of Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated and HSBC Securities (USA) Inc., offer, pledge, sell, contract to sell or otherwise dispose of any debt securities issued or guaranteed by the Company with terms substantially similar to the Notes.

(j) *Use of Proceeds*. The Company will apply the net proceeds from the sale of the Notes as described in the Registration Statement, the Time of Sale Information and the Prospectus under the heading "Use of Proceeds".

(k) *No Stabilization*. The Company will not take, directly or indirectly, any action designed to or that could reasonably be expected to cause or result in any stabilization or manipulation of the price of the Notes.

(l)     *Record Retention*. The Company will, pursuant to reasonable procedures developed in good faith, retain copies of each Issuer Free Writing Prospectus that is not filed with the Commission in accordance with Rule 433 under the Securities Act.

5. Certain Agreements of the Underwriters. Each Underwriter hereby represents and agrees that: (a) It has not and will not use, authorize use of, refer to, or participate in the planning for use of, any "free writing prospectus", as defined in Rule 405 under the Securities Act (which term includes use of any written information furnished to the Commission by the Company and not incorporated by reference into the Registration Statement and any press release issued by the Company) other than (i) a free writing prospectus that contains no "issuer information" (as defined in Rule 433(h)(2) under the Securities Act) that was not included (including through incorporation by reference) in the Preliminary Prospectus or a previously filed Issuer Free Writing Prospectus, (ii) any Issuer Free Writing Prospectus listed on Annex B or prepared pursuant to Section 3(c) or Section 4(c) above (including any electronic road show), or (iii) any free writing prospectus prepared by such Underwriter and approved by the Company in advance in writing (each such free writing prospectus referred to in clauses (i) or (iii), an "Underwriter Free Writing Prospectus"). Notwithstanding the foregoing, the Underwriters may use a term sheet substantially in the form of Annex C hereto without the consent of the Company.

16

(b) It has not and will not, without the prior written consent of the Company, use any free writing prospectus that contains the final terms of the Notes unless such terms have previously been included in a free writing prospectus filed with the Commission.

(c) It is not subject to any pending proceeding under Section 8A of the Securities Act with respect to the offering (and will promptly notify the Company if any such proceeding against it is initiated during the Prospectus Delivery Period).

6. Conditions of Underwriters' Obligations. The obligation of each Underwriter to purchase Notes on the Closing Date as provided herein is subject to the performance by the Company of its covenants and other obligations hereunder and to the following additional conditions:

(a) *Registration Compliance; No Stop Order.* No order suspending the effectiveness of the Registration Statement shall be in effect, and no proceeding for such purpose, pursuant to Rule 401(g)(2) or pursuant to Section 8A under the Securities Act shall be pending before or threatened by the Commission; the Prospectus and each Issuer Free Writing Prospectus shall have been timely filed with the Commission under the Securities Act (in the case of an Issuer Free Writing Prospectus, to the extent required by Rule 433 under the Securities Act) and in accordance with Section 4(a) hereof; and all requests by the Commission for additional information shall have been complied with to the reasonable satisfaction of the Representatives.

(b) *Representations and Warranties.* The representations and warranties of the Company contained herein shall be true and correct in all material respects (or true and correct in all respects in the case of representations and warranties qualified by materiality or Material Adverse Effect) on the date hereof and on and as of the Closing Date; and the statements of the Company and its officers made in any certificates delivered pursuant to this Agreement shall be true and correct in all material respects (or true and correct in all respects in the case of representations and warranties qualified by materiality or Material Adverse Effect) on and as of the Closing Date.

(c) *No Downgrade.* Subsequent to the earlier of (A) the Time of Sale and (B) the execution and delivery of this Agreement, (i) no downgrading shall have occurred in the rating accorded the Notes or any other debt securities or preferred stock of or guaranteed by the Company or any of its subsidiaries by any "nationally recognized statistical rating organization", as such term is defined by the Commission for purposes of Rule 436(g)(2) under the Securities Act and (ii) no such organization shall have publicly announced that it has under surveillance or review, or has changed its outlook with respect to, its rating of the Notes or of any other debt securities or preferred stock issued or guaranteed by the Company or any of its subsidiaries (other than an announcement with positive implications of a possible upgrading).

(d) *No Material Adverse Change.* No event or condition of a type described in Section 3(g) hereof shall have occurred or shall exist, which event or condition is not described in the Time of Sale Information (excluding any amendment or supplement thereto) and the Prospectus (excluding any amendment or supplement thereto) and the effect of which in the judgment of the Representatives makes it impracticable or inadvisable to proceed with the offering, sale or delivery of the Notes on the Closing Date on the terms and in the manner contemplated by this Agreement, the Time of Sale Information and the Prospectus.

17

(e) *Officer's Certificate.* The Representatives shall have received on and as of the Closing Date, a certificate of an executive officer of the Company who has specific knowledge of the Company's financial matters and is reasonably satisfactory to the Representatives (i) confirming that such officer has carefully reviewed the Registration Statement, the Time of Sale Information and the Prospectus and, to the knowledge of such officer, the representations set forth in Sections 3 (b) and 3(d) hereof are true and correct, (ii) confirming that the other representations and warranties of the Company in this Agreement are true and correct in all material respects (or true and correct in all respects in the case of representations and warranties qualified by materiality or Material Adverse Effect) and that the Company has complied in all material respects (or true and correct in all respects in the case of representations and warranties qualified by materiality or Material Adverse Effect) with all agreements and satisfied all conditions on their part to be performed or satisfied hereunder at or prior to the Closing Date and (iii) to the effect set forth in paragraphs (a), (c) and (d) above.

(f) *Comfort Letters.* On the date of this Agreement and on the Closing Date, PricewaterhouseCoopers LLP and Ernst & Young LLP shall have furnished to the Representatives, at the request of the Company, letters, dated the respective dates of delivery thereof and addressed to the Underwriters, in form and substance reasonably satisfactory to the Representatives, containing statements and information of the type customarily included in accountants' "comfort letters" to underwriters with respect to the financial statements and certain financial information of the Company and its consolidated subsidiaries contained or incorporated by reference in the Registration Statement, the Time of Sale Information and the Prospectus; provided that the letter delivered on the Closing Date shall use a "cut-off" date no more than three business days prior to such Closing Date.

(g) *Opinion and 10b-5 Statement of Counsel for the Company.* (i) Proskauer Rose LLP, U.S. counsel for the Company, shall have furnished to the Representatives, at the request of the Company, their written opinion and 10b-5 statement, dated the Closing Date and addressed to the Underwriters, in form and substance reasonably satisfactory to the Representatives, to the effect substantially as set forth in Annex A-1 hereto.

(h) *Opinion of the General Counsel of the Company.* James I. Edelson, General Counsel of the Company, shall have furnished to the Representatives such counsel's written opinion, dated the Closing Date and addressed to the Underwriters, in form and substance reasonably satisfactory to the Underwriters, to the effect substantially as set forth in Annex A-2 hereto.

(i) *Opinion and 10b-5 Statement of Counsel for the Underwriters.* The Representatives shall have received on and as of the Closing Date an opinion and 10b-5 statement of Simpson Thacher & Bartlett LLP, counsel for the Underwriters, with respect to such matters as the Representatives may reasonably request, and such counsel shall have received such documents and information as they may reasonably request to enable them to pass upon such matters.

18

(j) *No Legal Impediment to Issuance*. No action shall have been taken and no statute, rule, regulation or order shall have been enacted, adopted or issued by any federal, state or foreign governmental or regulatory authority that would, as of the Closing Date, prevent the issuance or sale of the Notes; and no injunction or order of any federal, state or foreign court shall have been issued that would, as of the Closing Date, prevent the issuance or sale of the Notes.

All opinions, letters, certificates and evidence mentioned above or elsewhere in this Agreement shall be deemed to be in compliance with the provisions hereof only if they are in form and substance reasonably satisfactory to counsel for the Underwriters.

7. Indemnification and Contribution.

(a) *Indemnification of the Underwriters*. The Company agrees to indemnify and hold harmless each Underwriter, its affiliates, directors and officers and each person, if any, who controls such Underwriter within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act, from and against any and all losses, claims, damages and liabilities (including, without limitation, legal fees and other expenses incurred in connection with any suit, action or proceeding or any claim asserted, as such fees and expenses are incurred), joint or several, that arise out of, or are based upon, (i) any untrue statement or alleged untrue statement of a material fact contained in the Registration Statement or caused by any omission or alleged omission to state therein a material fact required to be stated therein or necessary in order to make the statements therein, not misleading, or (ii) any untrue statement or alleged untrue statement of a material fact contained in any Preliminary Prospectus, the Prospectus (or any amendment or supplement thereto), any Issuer Free Writing Prospectus, any "issuer information" filed or required to be filed pursuant to Rule 433(d) under the Securities Act or any Time of Sale Information (including any Time of Sale Information that has subsequently been amended), or caused by any omission or alleged omission to state therein a material fact necessary in order to make the statements therein, in light of the circumstances under which they were made, not misleading, in each case except insofar as such losses, claims, damages or liabilities arise out of, or are based upon, any untrue statement or omission or alleged untrue statement or omission made in reliance upon and in conformity with any information relating to any Underwriter furnished to the Company in writing by such Underwriter through the Representatives expressly for use therein, it being understood and agreed that only such information furnished by the Underwriters consists of the information described as such in subsection (b) below.

The Company also agrees to indemnify and hold harmless Morgan Stanley & Co. Incorporated (the "QIU"), its affiliates, directors and officers and each person, if any, who controls the QIU within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act, from and against any and all losses, claims, damages, liabilities and judgments incurred as a result of the QIU participation as a "qualified independent underwriter" within the meaning of NASD Rule 2720 of FINRA in connection with the offering of the Notes, except for any losses, claims, damages, liabilities, and judgments resulting from the QIU's, or such controlling person's, willful misconduct or gross negligence as determined by a court of competent jurisdiction in a final non-appealable decision.

(b) *Indemnification of the Company*. Each Underwriter agrees, severally and not jointly, to indemnify and hold harmless the Company, its directors and officers who signed the Registration Statement and each person, if any, who controls the Company within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act to the same extent as the indemnity set forth in paragraph (a) above, but only with respect to any losses, claims, damages or liabilities that arise out of, or are based upon, any untrue statement or omission or alleged untrue statement or omission made in reliance upon and in conformity with any information relating to such Underwriter furnished to the Company in writing by such Underwriter through the Representatives expressly for use in the Registration Statement, the Prospectus (or any amendment or supplement thereto), any Issuer Free Writing Prospectus or any Time of Sale Information, it being understood and agreed that the only such information furnished by the Underwriters consists of the following: the statements set forth in the first, second and third sentences of the fourth paragraph, the third and fourth sentences of the sixth paragraph, and the eleventh paragraph under the heading "Underwriting" in the Prospectus.

19

(c) *Notice and Procedures*. If any suit, action, proceeding (including any governmental or regulatory investigation), claim or demand shall be brought or asserted against any person in respect of which indemnification may be sought pursuant to either paragraph (a) or (b) above, such person (the "Indemnified Person") shall promptly notify the person against whom such indemnification may be sought (the "Indemnifying Person") in writing; provided that the failure to notify the Indemnifying Person shall not relieve it from any liability that it may have under this Section 7 except to the extent that it has been materially prejudiced (through the forfeiture of substantive rights or defenses) by such failure; and provided, further, that the failure to notify the Indemnifying Person shall not relieve it from any liability that it may have to an Indemnified Person otherwise than under this Section 7. If any such proceeding shall be brought or asserted against an Indemnified Person and it shall have notified the Indemnifying Person thereof, the Indemnifying Person shall retain counsel reasonably satisfactory to the Indemnified Person (who shall not, without the consent of the Indemnified Person, be counsel to the Indemnifying Person) to represent the Indemnified Person and any others entitled to indemnification pursuant to Section 7 that the Indemnifying Person may designate in such proceeding and shall pay the fees and expenses of such proceeding and shall pay the fees and expenses of such counsel related to such proceeding, as incurred. In any such proceeding, any Indemnified Person shall have the right to retain its own counsel, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person unless (i) the Indemnifying Person and the Indemnified Person shall have mutually agreed to the contrary; (ii) the Indemnifying Person has failed within a reasonable time to retain counsel reasonably satisfactory to the Indemnified Person; (iii) the Indemnified Person shall have reasonably concluded that there may be legal defenses available to it that are different from or in addition to those available to the Indemnifying Person; or (iv) the named parties in any such proceeding (including any impleaded parties) include both the Indemnifying Person and the Indemnified Person and representation of both parties by the same counsel would be inappropriate due to actual or potential differing interest between them. It is understood and agreed that the Indemnifying Person shall not, in connection with any proceeding or related proceedings in the same jurisdiction, be liable for the fees and expenses of more than one separate firm (in addition to any local counsel) for all Indemnified Persons, and that all such fees and expenses shall be reimbursed as they are incurred; provided, however that if indemnity may be sought pursuant to the second paragraph of Section 7(a) above in respect of such proceeding, then in addition to such separate firm of the Underwriters, their affiliates and such control persons of the Underwriters, the Indemnifying Person shall be liable for the fees and expenses of not more than one separate firm (in addition to any local counsel) for the QIU in its capacity as a "qualified independent underwriter", its affiliates, directors, officers and all persons, if any, who control the QIU within the meaning of either Section 15 of the Securities Act or Section 20 of the Exchange Act. Any such separate firm for any Underwriter, its affiliates, directors and officers and any control persons of such Underwriter shall be designated in writing by such Underwriter and any such separate firm for the Company, its directors and officers who signed the Registration Statement and any control persons of the Company shall be designated in writing by the Company. The Indemnifying Person shall not be liable for any settlement of any proceeding effected without its written consent, but if settled with such consent or if there be a final judgment for the plaintiff, the Indemnifying Person agrees to indemnify each Indemnified Person from and against any loss or liability by reason of such settlement or judgment. No Indemnifying Person shall, without the written consent of the Indemnified Person, effect any settlement of any pending or threatened proceeding in respect of which any Indemnified Person is or could have been a party and indemnification could have been sought hereunder by such Indemnified Person, unless such settlement (x) includes an unconditional release of such Indemnified Person, in form and substance reasonably satisfactory to such Indemnified Person, from all liability on claims that are the subject matter of such proceeding and (y) does not include any statement as to or any admission of fault, culpability or a failure to act by or on behalf of any Indemnified Person.

20

---

*(d) Contribution.* If the indemnification provided for in paragraphs (a) and (b) above is unavailable to an Indemnified Person or insufficient in respect of any losses, claims, damages or liabilities referred to therein, then each Indemnifying Person under such paragraph, in lieu of indemnifying such Indemnified Person thereunder, shall contribute to the amount paid or payable by such Indemnified Person as a result of such losses, claims, damages or liabilities (i) in such proportion as is appropriate to reflect the relative benefits received by the Company on the one hand and the Underwriters or the QIU in its capacity as a "qualified independent underwriter", as the case may be, on the other from the offering of the Notes  or (ii) if the allocation provided by clause (i) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company on the one hand and the Underwriters or the QIU in its capacity as a "qualified independent underwriter", as the case may be, on the other in connection with the statements or omissions that resulted in such losses, claims, damages or liabilities, as well as any other relevant equitable considerations.  The relative benefits received by the Company on the one hand and the Underwriters or the QIU in its capacity as a "qualified independent underwriter", as the case may be, on the other shall be deemed to be in the same proportions as the net proceeds (before deducting expenses) received by the Company from the sale of the Notes and the total underwriting discounts and commissions received by the Underwriters in connection therewith, in each case as set forth in the table on the cover of the Prospectus, bear to the aggregate offering price of the Notes.  The relative fault of the Company on the one hand and the Underwriters or the QIU in its capacity as a "qualified independent underwriter", as the case may be, on the other shall be determined by reference to, among other things, whether the untrue or alleged untrue statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Company or by the Underwriters and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omission.

*(e) Limitation on Liability.*  The Company and the Underwriters agree that it would not be just and equitable if contribution pursuant to this Section 7 were determined by pro rata allocation (even if the Underwriters were treated as one entity for such purpose) or by any other method of allocation that does not take account of the equitable considerations referred to in paragraph (d) above.  The amount paid or payable by an Indemnified Person as a result of the losses, claims, damages and liabilities referred to in paragraph (d) above shall be deemed to include, subject to the limitations set forth above, any legal or other expenses incurred by such Indemnified Person in connection with any such action or claim.  Notwithstanding the provisions of this Section 7, in no event shall an Underwriter be required to contribute any amount in excess of the amount by which the total underwriting discounts and commissions received by such Underwriter with respect to the offering of the Notes exceeds the amount of any damages that such Underwriter has otherwise been required to pay by reason of such untrue or alleged untrue statement or omission or alleged omission.   No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation.  The Underwriters' obligations to contribute pursuant to this Section 7 are several in proportion to their respective purchase obligations hereunder and not joint.

21

(f) *Non-Exclusive Remedies*. The remedies provided for in this Section 7 are not exclusive and shall not limit any rights or remedies that may otherwise be available to any Indemnified Person at law or in equity.

8. Effectiveness of Agreement. This Agreement shall become effective upon the execution and delivery hereof by the parties hereto.

9. Termination. This Agreement may be terminated in the absolute discretion of the Representatives, by notice to the Company, if after the execution and delivery of this Agreement and prior to the Closing Date (i) trading generally shall have been suspended or materially limited on the New York Stock Exchange or the over-the-counter market; (ii) trading of any securities issued or guaranteed by the Company shall have been suspended on any exchange or in any over the counter market; (iii) a general moratorium on commercial banking activities shall have been declared by federal or New York State authorities; (iv) a material disruption in commercial banking or securities settlement or clearance services in the United States shall have occurred; or (v) there shall have occurred any outbreak or escalation of hostilities or any change in financial markets or any calamity or crisis, either within or outside the United States, that, in the judgment of the Representatives, is material and adverse and makes it impracticable or inadvisable to proceed with the offering, sale or delivery of the Notes on the Closing Date on the terms and in the manner contemplated by this Agreement, the Time of Sale Information and the Prospectus.

10. Defaulting Underwriter. (a) If, on the Closing Date, any Underwriter defaults on its obligation to purchase the Notes that it has agreed to purchase hereunder, the non-defaulting Underwriters may in their discretion arrange for the purchase of such Notes by other persons satisfactory to the Company on the terms contained in this Agreement. If, within 36 hours after any such default by any Underwriter, the non-defaulting Underwriters do not arrange for the purchase of such Notes, then the Company shall be entitled to a further period of 36 hours within which to procure other persons satisfactory to the non-defaulting Underwriters to purchase such Notes on such terms. If other persons become obligated or agree to purchase the Notes of a defaulting Underwriter, either the non-defaulting Underwriters or the Company may postpone the Closing Date for up to five full business days in order to effect any changes that in the opinion of counsel for the Company or counsel for the Underwriters may be necessary in the Registration Statement and the Prospectus or in any other document or arrangement, and the Company agrees to promptly prepare any amendment or supplement to the Registration Statement and the Prospectus that effects any such changes. As used in this Agreement, the term "Underwriter" includes, for all purposes of this Agreement unless the context otherwise requires, any person not listed in Schedule 1 hereto that, pursuant to this Section 10, purchases Notes that a defaulting Underwriter agreed but failed to purchase.

22

(b) If, after giving effect to any arrangements for the purchase of the Notes of a defaulting Underwriter or Underwriters by the non-defaulting Underwriters and the Company as provided in paragraph (a) above, the aggregate principal amount of such Notes that remains unpurchased does not exceed one-eleventh of the aggregate principal amount of all the Notes , then the Company shall have the right to require each non-defaulting Underwriter to purchase the principal amount of Notes that such Underwriter agreed to purchase hereunder plus such Underwriter's pro rata share (based on the principal amount of Notes that such Underwriter agreed to purchase hereunder) of the Notes of such defaulting Underwriter or Underwriters for which such arrangements have not been made.

(c) If, after giving effect to any arrangements for the purchase of the Notes of a defaulting Underwriter or Underwriters by the non-defaulting Underwriters and the Company as provided in paragraph (a) above, the aggregate principal amount of such Notes that remains unpurchased exceeds one-eleventh of the aggregate principal amount of all the Notes , or if the Company shall not exercise the right described in paragraph (b) above, then this Agreement shall terminate without liability on the part of the non-defaulting Underwriters.  Any termination of this Agreement pursuant to this Section 10 shall be without liability on the part of the Company, except that the Company will continue to be liable for the payment of expenses as set forth in Section 11 hereof and except that the provisions of Section 7 hereof shall not terminate and shall remain in effect; provided however, that the Company shall not be liable for the payment of expenses incurred by any defaulting Underwriter.

(d) Nothing contained herein shall relieve a defaulting Underwriter of any liability it may have to the Company or any non-defaulting Underwriter for damages caused by its default.

11. Payment of Expenses. (a) Whether or not the transactions contemplated by this Agreement are consummated or this Agreement is terminated, the Company agrees to pay or cause to be paid all costs and expenses incident to the performance of its obligations hereunder, including without limitation, (i) the costs incident to the authorization, issuance, sale, preparation and delivery of the Notes and any taxes payable in that connection; (ii) the costs incident to the preparation, printing and filing under the Securities Act of the Registration Statement, the Preliminary Prospectus, any Issuer Free Writing Prospectus, any Time of Sale Information and the Prospectus (including all exhibits, amendments and supplements thereto) and the distribution thereof; (iii) the costs of reproducing and distributing each of the Transaction Documents; (iv) the fees and expenses of the Company's counsel and independent accountants; (v) the fees and expenses incurred in connection with the registration or qualification and determination of eligibility for investment of the Notes under the laws of such jurisdictions as the Representatives may designate and the preparation, printing and distribution of a Blue Sky Memorandum (including the related fees and expenses of counsel for the Underwriters); (vi) any fees charged by rating agencies for rating the Notes; (vii) the costs and charges of the Trustee and any paying agent (including related fees and expenses of any counsel to such parties); (viii) all expenses incurred by the Company in connection with any "road show" presentation to potential investors; and (ix) all expenses and application fees incurred in connection with any filing with, and clearance of the offering by, FINRA, including any counsel fees incurred on behalf of or disbursements by the QIU in its capacity as "qualified independent underwriter."

23

(b) If (i) this Agreement is terminated pursuant to Section 9, (ii), the Company for any reason fails to tender the Notes for delivery to the Underwriters or (iii) the Underwriters decline to purchase the Notes for any reason permitted under this Agreement, the Company agrees to reimburse the Underwriters for all out-of-pocket costs and expenses (including the fees and expenses of their counsel) reasonably incurred by the Underwriters in connection with this Agreement and the offering contemplated hereby.

12. Persons Entitled to Benefit of Agreement.  This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and the officers and directors and any controlling persons referred to herein, and the affiliates of each Underwriter referred to in Section 7 hereof.  Nothing in this Agreement is intended or shall be construed to give any other person any legal or equitable right, remedy or claim under or in respect of this Agreement or any provision contained herein.  No purchaser of Notes from any Underwriter shall be deemed to be a successor merely by reason of such purchase.

13. Survival.  The respective indemnities, rights of contribution, representations, warranties and agreements of the Company and the Underwriters and the provisions set forth in Section 11(b), 12 and 15 hereof, contained in this Agreement or made by or on behalf of the Company or the Underwriters pursuant to this Agreement or any certificate delivered pursuant hereto shall survive the delivery of and payment for the Notes and shall remain in full force and effect, regardless of any termination of this Agreement or any investigation made by or on behalf of the Company or the Underwriters.

14. Certain Defined Terms.  For purposes of this Agreement, (a) except where otherwise expressly provided, the term "affiliate" has the meaning set forth in Rule 405 under the Securities Act; (b) the term "business day" means any day other than a day on which banks are permitted or required to be closed in New York City; (c) the term "subsidiary" has the meaning set forth in Rule 405 under the Securities Act and (d) the term "written communication" has the meaning set forth in Rule 405 under the Securities Act.

15. Miscellaneous.  (a) *Authority of the Representatives*.  Any action by the Underwriters hereunder may be taken by Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated and HSBC Securities (USA) Inc. on behalf of the Underwriters, and any such action taken by Citigroup Global Markets Inc., Morgan Stanley & Co. Incorporated and HSBC Securities (USA) Inc. shall be binding upon the Underwriters.

*(b) Notices*.  All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given if mailed or transmitted and confirmed by any standard form of telecommunication.  Notices to the Underwriters shall be given to Citigroup Global Markets Inc., 388 Greenwich Street, New York, New York, 10013 (fax: 212-816-7912 ); Attention: General Counsel, to Morgan Stanley & Co. Incorporated, 1585 Broadway, New York, New York, 10036; Attention: General Counsel, and to HSBC Securities (USA) Inc., 452 Fifth Avenue, 3rd Floor, New York, New York 10018; Attention: General Counsel.  Notices to the Company shall be given to them at Overseas Shipholding Group, Inc., 666 Third Avenue, New York, New York, 10017 (fax: 212-251-1180); Attention: General Counsel.

24

(c) *Governing Law*.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws that would apply the law of another jurisdiction.

(d) *Judgment Currency*. The Company agrees to indemnify each Underwriter, its affiliates, directors and officers and each person, if any, who controls such Underwriter within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act against any loss incurred, as incurred, as a result of any judgment being given in connection with this Agreement for which indemnification is provided by any such person and any such judgment or order being paid in a currency (the "Judgment Currency") other than U.S. dollars as a result of any variation as between (i) the spot rate of exchange in New York at which the Judgment Currency would have been convertible into U.S. dollars as of the date such judgment or order is entered, and (ii) the spot rate of exchange at which the indemnified party is first able to purchase U.S. dollars with the amount of Judgment Currency actually received by the indemnified party. The foregoing indemnity shall constitute a separate and independent, several and not joint, obligation of the Company on the one hand, and each Underwriter, on the other, and shall continue in full force and effect notwithstanding any such judgment or order. The term "spot rate of exchange" shall include any premiums and costs of exchange payable in connection with the purchase of, or conversion of, the relevant currency.

(e) *Jury Trial*. The Company and the Underwriters hereby irrevocably waive, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to each of the Transaction Documents or the transactions contemplated thereby.

(f) *Counterparts*. This Agreement may be signed in counterparts (which may include counterparts delivered by any standard form of telecommunication), each of which shall be an original and all of which together shall constitute one and the same instrument.

(g) *Amendments or Waivers*.  No amendment or waiver of any provision of this Agreement, nor any consent or approval to any departure therefrom, shall in any event be effective unless the same shall be in writing and signed by the parties hereto.

(h) *Headings*.  The headings herein are included for convenience of reference only and are not intended to be part of, or to affect the meaning or interpretation of, this Agreement.

25

If the foregoing is in accordance with your understanding, please indicate your acceptance of this Agreement by signing in the space provided below.

Very truly yours,

OVERSEAS SHIPHOLDING GROUP, INC.

By:/s/ James I. Edelson
    Name: James I. Edelson
    Title:   Senior Vice President, General
    Counsel and Secretary

Citigroup Global Markets Inc.

    By /s/ Barbara Matas
    Name: Barbara Matas
    Title:   Managing Director

Morgan Stanley & Co. Incorporated

    By /s/ Gaurav Gupta
    Name: Gaurav Gupta
    Title:   Vice President

HSBC Securities (USA) Inc.

    By /s/ Richard N. Zobkiw, Jr.
    Name: Richard N. Zobkiw, Jr.
    Title:   Vice President, Transaction Management Americas

For themselves and on behalf of the
several Underwriters listed
in Schedule I hereto.

Schedule 1

| Underwriter | Principal Amount |
| --- | --- |
| Citigroup Global Markets Inc. | $105,000,000 |
| Morgan Stanley & Co. Incorporated | $ 60,000,000 |
| HSBC Securities (USA) Inc. | $ 60,000,000 |
| Deutsche Bank Securities Inc. | $ 18,750,000 |
| DnB NOR Markets, Inc. | $ 18,750,000 |
| Goldman, Sachs & Co. | $ 18,750,000 |
| ING Financial Markets LLC | $ 18,750,000 |
| Total | $300,000,000 |

S-1

ANNEX B

**Time of Sale Information**

Pricing Term Sheet, dated March 24, 2010, relating to the Notes

B-1

ANNEX C



**$300,000,000**

## Overseas Shipholding Group, Inc.

### 8 $\frac{1}{8}$% Senior Notes due 2018

**Pricing Term Sheet**
**March 24, 2010**

| | |
|---|---|
| **Issuer:** | **Overseas Shipholding Group, Inc.** |
| Size: | $300,000,000 |
| Maturity: | March 30, 2018 |
| Coupon: | 8.125% |
| Price: | 98.563% of face amount |
| Yield to maturity: | 8.375% |
| Spread to Benchmark Treasury: | 490 BPS |
| Interest Payment Dates: | September 30 and March 30, commencing September 30, 2010 |
| Redemption Provisions: | |
| Make-whole call | At any time at a discount rate of Treasury plus 50 basis points. |
| Equity Clawback | Prior to March 30, 2013 up to 35% may be redeemed at 108.125% |
| Underwriting Discount: | 1.75% |
| Gross Proceeds: | $295,689,000 |
| Net Proceeds to Issuer Before Expenses: | $290,439,000 |

C-1

| | |
|---|---|
| Trade Date: | Wednesday, March 24, 2010 |
| Settlement: | T+3: Monday, March 29, 2010 |
| Denominations: | $2,000, and integral multiples of $1,000 in excess thereof. |
| CUSIP/ISIN: | 690368 AH8 / US690368AH88 |
| Ratings: | Ba3/BB- |
| Joint Book-Running Managers: | Citigroup Global Markets Inc. |
| | Morgan Stanley & Co. Incorporated |
| | HSBC Securities (USA) Inc. |
| Co- Managers: | Deutsche Bank Securities Inc. |
| | DnB NOR Markets, Inc. |
| | Goldman, Sachs & Co. |
| | ING Financial Markets LLC |

The issuer has filed a registration statement (including a prospectus) with the SEC for the offering to which this communication relates.  Before you invest, you should read the  prospectus in that registration statement and other documents the issuer has filed with the SEC for more complete information about the issuer and this offering.  You may get these documents for free by visiting EDGAR on the SEC Web site at www.sec.gov.  Alternatively, the issuers or any underwriter will arrange to send you the prospectus if you request it by contacting any of the Joint Book-Running Managers:

| | | |
|---|---|---|
| **Citigroup Global Markets Inc.** | **Morgan Stanley & Co. Incorporated** | **HSBC Securities (USA) Inc.** |
| **Attention: Prospectus Department** | **Attention: Prospectus Department** | **Attention: Prospectus Department** |
| **Brooklyn Army Terminal** | **180 Varick Street** | **452 Fifth Avenue** |
| **140 58th Street, 8th Floor** | **New York, New York 10014** | **New York, New York 10018** |
| **Brooklyn, New York 11220** | **prospectus@morganstanley.com** | **(866) 811-8049** |
| **(800) 831-9146** | | |

The information in this communication supersedes the information in the preliminary prospectus supplement to the extent it is inconsistent with such information. Before you invest, you should read the preliminary prospectus supplement (including the documents incorporated by reference therein) for more information concerning the issuer and the notes.

Any disclaimers or other notices that may appear below are not applicable to this communication and should be disregarded. Such disclaimers or other notices were automatically generated as a result of this communication being sent via Bloomberg email or another communication system.

C-2

---

EXHIBIT C

# OVERSEAS SHIPHOLDING GROUP
# INC (OSGIQ)

666 THIRD AVENUE
NEW YORK, NY 10017
212. 251.1153

# EX-3

**8-K Filed on 04/18/2006 − Period: 04/12/2006**
File Number 001−06479



LIVEDGAR   Information Provided by Thomson Reuters Accelus ©2011. All Rights Reserved.
800.669.1154
www.gsionline.com

Exhibit 3.1

AMENDED AND RESTATED

BY LAWS

OF

OVERSEAS SHIPHOLDING GROUP, INC.

ARTICLE I

OFFICES

SECTION 1.    Delaware Office. The registered office of the Corporation in the State of Delaware shall be in the City of Wilmington, County of New Castle, State of Delaware, but the location of said office may be changed from time to time, to any other place within the State of Delaware, in the manner provided by law.

SECTION 2.    Other Offices. The Corporation may have an office or offices at such other places in the United States or elsewhere as the Board of Directors may from time to time determine.

ARTICLE II

MEETING OF STOCKHOLDERS

SECTION 1.    Annual Meeting. The annual meeting of stockholders of the Corporation for the election of directors and for the transaction of such other business as may properly come before said meeting shall be held on the third Tuesday in May or any subsequent date in the months of May or June of each year, the specific date, hour and place, within or without the State of Delaware, to be determined in advance by the Board of Directors and stated in the notice of said meeting. Said meeting may be adjourned from day to day until its business is completed.

SECTION 2.    Special Meetings. Special meetings of stockholders for any purpose or purposes may be called at any time by the President or any Vice President, or by resolution of the Board of Directors, to be held such date, time and place either within or without the State of Delaware as may be stated in the notice of the meeting or as may be otherwise required by the Certificate of Incorporation of the Corporation. The business transacted at any special meeting shall be limited to the purposes stated in the notice.

SECTION 3.    Notice of Meetings. Whenever stockholders are required or permitted to take any action at a meeting, a written notice of the meeting shall be given which shall state the place, date and hour of the meeting, and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Unless otherwise provided by law, the written notice of any meeting shall be given not less than ten nor more than fifty days before the date of the meeting to each stockholder entitled to vote at such meeting. If mailed, such notice shall be deemed to be given when deposited in the mail, postage prepaid, directed to the stockholder at such stockholder's address as it appears on the records of the Corporation.

SECTION 4.    Quorum. The holders of a majority of the stock issued and outstanding and entitled to vote thereat, present in person or by proxy, shall constitute a quorum at all meetings of the stockholders. If a quorum shall not be present or represented at any meeting of the stockholders, the stockholders entitled to vote thereat, present in person or by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting of the time and place of the adjourned meeting, until a quorum shall be present or represented. At such adjourned meeting any business may be transacted that might have been transacted at the original meeting. If any adjournment, whether a quorum is present or not, is for more than thirty days, or if after the adjournment a new record date is fixed for the adjourned meeting, notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. When a quorum is present at any meeting, directors shall be elected by a plurality and all other corporate action shall be authorized by a majority of the votes cast by the holders of stock entitled to vote thereon, unless the question is one upon which by express provision of law or of the Certificate of Incorporation or of these By Laws a larger or different vote is required, in which case such express provision shall govern. The stockholders present or represented at any duly called and held meeting at which a quorum is present or represented may continue to transact business until adjournment, irrespective of the withdrawal of any stockholders from the meeting.

SECTION 5.    Organization. The President, or in his absence, the Executive Vice President, or in the absence of both of said officers, a Vice President designated by the President or by the Board of Directors, shall preside at all meetings of stockholders. The Secretary, or in his absence an Assistant Secretary, or in the absence of both the Secretary and an Assistant Secretary, any person designated by the President or other person presiding at the meeting, shall act as secretary of the meeting.

SECTION 6.    Order of Business. The Order of Business at all meetings of stockholders, unless otherwise determined by a vote of the holders of a majority of the number of shares present in person or represented by proxy thereat, shall be determined by the presiding officer.

At any annual meeting of the stockholders, only such business shall be conducted as shall have been brought before the annual meeting (1) by or at the direction of the Board of Directors or (2) by any stockholder who is a holder of record at the time of the giving of the notice provided for in this Article II, Section 6, who is entitled to vote at the meeting and who complies with the procedures set forth in this Article II, Section 6.

For business properly to be brought before an annual meeting of stockholders by a stockholder, the stockholder must have given timely notice thereof in proper written form to the Secretary of the Corporation. To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation not less than 60 days nor more than 90 days prior to the first anniversary of the date of the immediately preceding annual meeting; provided, however, that in the event that the date of the annual meeting is more than 30 days earlier or more than 60 days later than such anniversary date, notice by the stockholder to be timely must be so delivered or received not earlier than the 90th day prior to such annual meeting and not later than the close of business on the later of the 60th day prior to such annual meeting or the 10th day following the day on which public announcement of the date of such meeting is first made. To be in proper written form, a stockholder's notice to the Secretary shall set forth in writing as to each matter the stockholder proposes to bring before the annual meeting: (1) a brief description of the business desired to be brought before the annual meeting and the reasons for conducting such business at the annual meeting; (2) the name and address, as they appear on the Corporation's books, of the stockholder proposing such business; (3) the series and number of shares of stock of the Corporation which are beneficially owned by the stockholder; (4) any material interest of the stockholder in such business; and (5) if the stockholder intends to solicit proxies in support of such stockholder's proposal, a representation to that effect. The foregoing notice requirements shall be deemed satisfied by a stockholder if the stockholder has notified the Corporation of his or her intention to present a proposal at an annual meeting and such stockholder's proposal has been included in a proxy statement that has been prepared by management of the Corporation to solicit proxies for such annual meeting; provided, however, that if such stockholder does not appear or send a qualified representative to present such proposal at such annual meeting, the Corporation need not present such proposal for a vote at such meeting, notwithstanding that proxies in respect of such vote may have been received by the Corporation. Notwithstanding anything in these By–Laws to the contrary, no business shall be conducted at any annual meeting except in accordance with the procedures set forth in this Article II, Section 6. The presiding officer of an annual meeting may refuse to permit any business to be brought before an annual meeting which fails to comply with the foregoing procedures or, in the case of a stockholder proposal, if the stockholder solicits proxies in support of such stockholder's proposal without having made the representation required by clause (5) above.

SECTION 7.        Proxies and Voting of Shares. Except as otherwise provided in the Certificate of Incorporation of the Corporation, and subject to the provisions and limitations herein and therein contained, at all meetings of the stockholders each stockholder of record shall be entitled to cast one vote for each share of stock held by him of record, as shown on the record of stockholders of the Corporation. At any meeting of stockholders, each stockholder entitled to vote any shares on any matter to be voted upon at such meeting may exercise such voting right either in person or by proxy appointed by an instrument in writing, which shall be filed with the secretary of the meeting before being voted. Except as otherwise expressly required by statute, the vote on any question need not be by written ballot.

SECTION 8.        Action by Consent of Stockholders. Except as otherwise provided by law, any action required by law to be taken at any annual or special meeting of stockholders or any action that may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares of stock entitled to vote thereon were present and voted. Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders who have not consented in writing.

ARTICLE III

DIRECTORS

SECTION 1.        Power and Duties of the Board of Directors. The Board of Directors shall have the general management of the affairs, property and business of the Corporation and may adopt such rules and regulations for that purpose and for the conduct of their meetings as they may deem proper. The Board may exercise and shall be vested with the powers of the Corporation insofar as not inconsistent with law, the Certificate of Incorporation or with these By Laws.

SECTION 2.        Number and Qualifications. Except as the Certificate of Incorporation may otherwise provide, the authorized number of directors constituting the whole Board shall not be less than three (3) nor more than seventeen (17). As of the date hereof, the whole Board shall consist of thirteen directors. The authorized number of directors, within the limits above specified, may be changed by the affirmative vote of a majority of the whole Board at any regular or special meeting of the Board of Directors, provided that the number of directors shall not be reduced by action of the Board of Directors below the number of directors then in office. Directors need not be stockholders of the Corporation.

No more of the directors than a minority of the number necessary to constitute a quorum shall be persons other than citizens of the United States.

SECTION 3.        Election and Term. Except as otherwise provided by law or by these By Laws, the directors of the Corporation elected after the election of the first Board shall be elected at an annual meeting of stockholders in each year. Each director shall be elected to serve until the next annual meeting of stockholders and until a successor shall have been duly elected and shall qualify.

SECTION 4.        Notification of Nominations. Nominations for the election of directors may be made by the Board or by any stockholder who is a stockholder of record at the time of giving of the notice of nomination provided for in this Article III, Section 4 and who is entitled to vote for the election of directors. Any stockholder of record entitled to vote for the election of directors at a meeting may nominate persons for election as directors only if timely written notice of such stockholder's intent to make such nomination is given, either by personal delivery or by United States mail, postage prepaid, to the Secretary of the Corporation. To be timely, a stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation (1) with respect to an election to be held at an annual meeting of the stockholders, not less than 60 days nor

more than 90 days prior to the first anniversary of the date of the immediately preceding annual meeting; provided, however, that in the event that the date of the annual meeting is more than 30 days earlier or more than 60 days later than such anniversary date, notice by the stockholder to be timely must be so delivered or received not earlier than the 90th day prior to such annual meeting and not later than the close of business on the later of the 60th day prior to such annual meeting or the 10th day following the day on which public announcement of the date of such meeting is first made; and (2) with respect to an election to be held at a special meeting of the stockholders for the election of directors, not earlier than the 90th day prior to such special meeting and not later than the close of business on the later of the 60th day prior to such special meeting or the 10th day following the day on which public announcement is first made of the date of the special meeting and of the nominees to be elected at such meeting. Each such notice shall set forth: (1) the name and address, as they appear on the Corporation's books, of the stockholder who intends to make the nomination and the name and address of the person or persons to be nominated; (2) the series and number of shares of stock of the Corporation which are beneficially owned by the stockholder; (3) a representation that the stockholder is a holder of record of stock of the Corporation entitled to vote in the election of directors and intends to appear in person or by proxy at the meeting to nominate the person or persons specified in the notice; (4) a description of all arrangements or understandings between the stockholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nomination or nominations are to be made by the stockholder; (5) such other information regarding each nominee proposed by such stockholder as would have been required to be included in a proxy statement filed pursuant to the proxy rules of the Securities and Exchange Commission had each nominee been nominated, or intended to be nominated, by the Board; (6) the executed written consent of each nominee to serve as a director of the Corporation if so elected; and (7) if the stockholder intends to solicit proxies in support of such stockholder's nominee(s), a representation to that effect. The presiding officer of the meeting may refuse to acknowledge the nomination of any person not made in compliance with the foregoing procedure or if the stockholder solicits proxies in favor of such stockholder's nominee(s) without having made the representations required by the immediately preceding sentence. Only such persons who are nominated in accordance with the procedures set forth in this Article III, Section 4 shall be eligible to serve as directors of the Corporation.

Notwithstanding anything in the immediately preceding paragraph of this Article III, Section 4 to the contrary, in the event that the number of directors to be elected to the Board at an annual meeting of the stockholders is increased and there is no public announcement naming all of the nominees for directors or specifying the size of the increased Board made by the Corporation at least 90 days prior to the first anniversary of the date of the immediately preceding annual meeting, a stockholder's notice required by this Article III, Section 4 shall also be considered timely, but only with respect to nominees for any new positions created by such increase, if it shall be delivered to or mailed to and received by the Secretary at the principal executive offices of the Corporation not later than the close of business on the 10th day following the day on which such public announcement is first made by the Corporation.

SECTION 5.    Place of Meeting. The Board of Directors may hold its meetings at such place or places within or without the State of Delaware as the Board may from time to time determine or, in the absence of such determination, as may be specified in the call of any meeting.

SECTION 6.    Regular Meetings. After each annual meeting of stockholders for the election of directors or as soon thereafter as may be convenient, the newly elected Board of Directors shall meet for the purpose of organization and the transaction of such other business as may properly come before the meeting. Such meeting shall be held at the place where the annual meeting of stockholders was held at which the directors were elected, or at such other place as may have been designated by the Board of Directors or as may be fixed by consent of all of the newly elected directors. Notice of such meeting need not be given. Regular meetings of the Board of Directors shall be held at such time and place, either within or outside of the State of Delaware, as may be determined by resolution of the Board. No notice of a regular meeting need be given and any business may be transacted at a regular meeting, except as otherwise provided by law, the Certificate of Incorporation or these By Laws.

SECTION 7.    Special Meetings. Special meetings of the Board of Directors may be called from time to time by the President or the Executive Vice President, and shall be called by them at the written request of any three or more directors. Each special meeting of the Board shall be held at such date, time, and place, either within or outside of the State of Delaware, as shall be designated in the call of such meeting.

SECTION 8.    Notice of Special Meeting. Notice of a special meeting of the Board of Directors, stating the place, date and hour thereof, shall be given by mail, telegram, or cable addressed to each director at his residence or business address not less than five days before the day of the meeting or by delivering the same to him at his residence or business address not less than two days before the day of the meeting. Except as otherwise required by statute or these By Laws, no notice or waiver of notice of a special meeting of the Board need state the purpose or purposes of such meeting, and any business may be transacted thereat.

SECTION 9.    Quorum. A majority of the directors then in office, but in no event less than one third of the whole Board, shall constitute a quorum for the transaction of business at any meeting of the Board of Directors. If less than a quorum be present at a meeting, the directors present thereat may adjourn the meeting from time to time without notice other than announcement at the meeting, until a quorum shall be present. Except as otherwise provided by law, by the Certificate of Incorporation or by these By Laws, when a quorum is present at any meeting of the Board of Directors, a majority of the directors present at such meeting shall decide any question brought before such meeting and the action of such majority shall be deemed to be the action of the Board.

SECTION 10.    Organization. The President or, in his absence, the Executive Vice President, or, in the absence of both of said officers, any director selected by vote of a majority of the directors then present, shall preside over each meeting of the Board of Directors. The Secretary, or in his absence an Assistant Secretary, or in the absence of both the Secretary and an Assistant Secretary, any person designated by the President or other person presiding at the meeting, shall act as secretary of the meeting.

SECTION 11.      Compensation of Directors. The Board of Directors shall have authority to fix the compensation of directors for services in any capacity.

SECTION 12.      Action by Written Consent. Any action required or permitted to be taken at any meeting of the Board of Directors or by any committee thereof may be taken without a meeting, if all members of the Board or of such committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee.

ARTICLE IV

COMMITTEES

SECTION 1.      Executive Committee. The Board of Directors may by resolution or resolutions adopted by a majority of the whole Board, designate three or more of its number to constitute an Executive Committee, which to the extent provided in said resolution or resolutions shall have and may exercise all the powers and authority of the Board except as otherwise provided by law or by the Certificate of Incorporation. Only United States citizens may be members of the Executive Committee. The Board of Directors shall have the power at any time to fill vacancies in, to change the membership of, or to dissolve the Executive Committee. The Executive Committee may hold meetings and makes rules for the conduct of its business. A majority of the members of the Executive Committee shall constitute a quorum for the transaction of business by said Committee, and it may act by affirmative vote of a majority of those present at a meeting at which a quorum is present. All action of the Executive Committee shall be reported to the Board of Directors at its meeting next succeeding such action.

SECTION 2.      Other Committees. The Board of Directors may, by resolution or resolutions adopted by a majority of the whole Board, designate one or more other committees, each such committee to consist of one or more of the directors of the Corporation, and to have only such powers as may be provided in said resolution or resolutions.

ARTICLE V

OFFICERS

SECTION 1.      Executive Officers. The executive officers of the Corporation shall be elected by the Board of Directors and shall be a President, an Executive Vice President, one or more Senior Vice Presidents, one or more Vice Presidents, a Treasurer, a Controller and a Secretary. (Reference in these By Laws to the "Vice Presidents" shall, unless the context indicates otherwise, be deemed to include the Executive Vice President, the Senior Vice Presidents and the Vice Presidents.) Any number of offices may be held by the same person but no officer shall execute, acknowledge or verify any instrument in more than one capacity. The powers and duties of the officers shall be as specified in these By Laws or as may from time to time be determined by the Board of Directors.

SECTION 2.      Election and Term. The executive officers shall be elected by the Board at the first meeting thereof after each annual meeting of stockholders. Each executive officer shall be elected to serve until the next annual meeting of the Board of Directors and until his successor shall have been duly elected and shall qualify.

SECTION 3.      Other Officers. The Board of Directors may also appoint such other officers and agents as it may deem necessary for the transaction of the business of the Corporation. Such officers and agents shall hold office for such period, have such authority and perform such duties as shall be determined from time to time by the Board.

SECTION 4.      The President. The President shall, if present, preside at all meetings of stockholders and of the Board of Directors, and shall keep the Board of Directors fully informed and shall freely consult with them concerning the business of the Corporation. He shall be the chief executive officer of the Corporation, and, subject to the control of the Board of Directors, shall have general direction and supervision over the business and affairs of the Corporation and, in general, perform all duties incident to the office of President and such other duties as from time to time may be assigned to him by the Board of Directors. The President shall at all times be a citizen of the United States.

SECTION 5.      Vice Presidents. The Executive Vice President and the Senior Vice President or Senior Vice Presidents, and the other Vice President or Vice Presidents, in that order, shall in the absence of the President perform all of the duties and exercise all of the powers of the President, to the extent and in the respects authorized by the Board of Directors or these By Laws, and each of them shall have such duties as from time to time may be assigned to him by the Board of Directors. The Executive Vice President shall at all times be a citizen of the United States.

SECTION 6.      The Treasurer. The Treasurer shall be the chief financial officer of the Corporation and shall have charge and custody of and be responsible for all funds and securities of the Corporation, and deposit all such funds in the name of the Corporation in such banks, trust companies or other depositories as shall be selected in accordance with the provisions of these By Laws; at all reasonable times exhibit his books of account and records to any of the directors of the Corporation upon application during business hours at the place where such books and records are kept; receive, and give receipts for, monies due and payable to the Corporation from any source whatsoever; and in general, perform all the duties incident to the office of Treasurer and such other duties as from time to time may be assigned to him by the Board of Directors or the President.

SECTION 7.      The Controller. The Controller shall be the chief accounting officer of the Corporation and shall keep or cause to be kept at the principal place of business of the Corporation, and shall be responsible for the keeping of, correct records of the business and transactions of the Corporation and shall exhibit such records to any of the directors or the President or Treasurer of the Corporation upon application during business hours at the office of the Corporation where such records are kept.

SECTION 8.         The Secretary. The Secretary shall record or cause to be recorded in books provided for the purpose all the proceedings of the meetings of the Board of Directors and the stockholders of the Corporation; shall attend to the giving of all notices of such meetings in accordance with the provisions of these By Laws and as required by law; shall be custodian of the records (other than financial) and of the seal of the Corporation and have authority to affix the seal to all documents the execution of which on behalf of the Corporation is duly authorized in accordance with the provisions of these By Laws: and in general, shall perform all duties incident to the office of Secretary and such other duties as may, from time to time, be assigned to him by the Board of Directors or the President.

SECTION 9.         Certain Officers to Give Bonds. Every officer, agent or employee of the Corporation, who may receive, handle, or disburse money for its account or who may have any of the Corporation's property in his custody or be responsible for its safety or preservation, may be required in the discretion of the Board of Directors to give bond, in the sum and with such sureties and in such form as shall be satisfactory to the Board of Directors, for the faithful performance of the duties of his office and for the restoration to the Corporation, in the event of his death, resignation or removal from office, of all books, papers, vouchers, monies and other property of whatsoever kind in his custody belonging to the Corporation.

SECTION 10.       Compensation. The compensation of the executive officers of the Corporation shall be fixed from time to time by the Board of Directors. No officer shall be prevented from receiving compensation by reason of the fact that he is also a director of the Corporation or a member of any committee.

SECTION 11.       Tax Returns. Unless otherwise provided by the Board of Directors, the President, any of the Vice Presidents, the Treasurer, the Controller or the Secretary shall be authorized to sign tax returns on behalf of the Corporation.

## ARTICLE VI

## RESIGNATIONS AND REMOVALS

SECTION 1.         Resignations. Any director or officer of the Corporation may resign as such at any time by giving written notice to the Board of Directors or to the President or to the Secretary of the Corporation, and any member of any committee may resign at any time by giving notice either as aforesaid or to the Committee of which he is a member or to the chairman thereof. Any such resignation shall take effect at the time specified therein or, if the time be not specified, upon receipt thereof; and unless otherwise specified therein, acceptance of such resignation shall not be necessary to make it effective.

SECTION 2.         Removals. The stockholders at any meeting called for the purpose, by vote of the majority of the outstanding stock entitled to vote, may at any time remove any director with or without cause. The Board of Directors by vote of not less than a majority of the whole Board may at any time with or without cause remove from office any officer or committee member elected or appointed by it.

## ARTICLE VII

## VACANCIES

SECTION 1.         Among Directors. If the office of any director becomes vacant at any time by reason of death, resignation, retirement, disqualification, removal from office, increase in the number of directors, or otherwise, a majority of the directors then in office, although less than a quorum, or the sole remaining director, shall have the exclusive right to choose a successor to fill such vacancy, and any director so chosen shall hold office, subject to the provisions of these By Laws, until the next annual election of directors and until his successor shall be duly elected and shall qualify.

SECTION 2.         Among Officers, etc. If the office of the President, any of the Vice Presidents, the Treasurer, the Controller or the Secretary, or of any other officer or member of any committee, becomes vacant at any time by reason of death, resignation, retirement, disqualification, removal from office, or otherwise, the Board of Directors shall have the exclusive right to fill such vacancy or vacancies.

## ARTICLE VIII

## CITIZENSHIP OF STOCKHOLDERS

The outstanding shares of the Corporation shall at all times be owned by citizens of the United States to such extent as will, in the judgment of the Board, reasonably assure the preservation of the Corporation's status as a United States citizen within the provisions of Section 2 of the Shipping Act of 1916, as amended, or any successor statute applicable to the business being conducted by the Corporation (the "Citizenship Provisions"). The Board of Directors may restrict any original issuance of shares of the Corporation to citizens of the United States as defined in the Citizenship Provisions ("United States Citizens"), and, in any event, shall from time to time establish, as a condition to the issuance or transfer of shares of the Corporation to non United States Citizens, the minimum percentage of the total outstanding shares of the Corporation which shall be owned by United States Citizens (the "Minimum U.S. Ownership"), which minimum percentage may, in the discretion of the Board of Directors, exceed the minimum percentage required by law. Nothing herein shall be deemed to preclude ownership by United States Citizens of shares of the Corporation in excess of the Minimum U.S. Ownership.

Certificates evidencing shares of stock of the Corporation may be issued in separate series, denominated respectively "Domestic Share Certificates" and "Foreign Share Certificates". Domestic Share Certificates shall be issued in respect of shares owned of record and beneficially by United States Citizens; Foreign Share Certificates shall be issued in respect of shares owned of record or beneficially by non United States Citizens. Holders of Domestic Shares Certificates and of Foreign Share Certificates shall have in all respects the same corporate status and corporate rights, share for share, except that transfers of

Domestic Share Certificates to non United States Citizens shall be restricted as herein provided.

If any shares evidenced by Domestic Share Certificates or by Foreign Share Certificates shall be transferred to United States Citizens, the share certificates issued to the transferee in respect of the shares transferred shall be Domestic Share Certificates. Any purported transfer to non United States Citizens of shares evidenced by Domestic Share Certificates which, at the time of presentation to the transfer agent of the Corporation, would result in reducing the ownership of shares by United States Citizens below the Minimum U.S. Ownership shall not be recorded on the books of the Corporation and shall be ineffective to transfer the shares or any voting or other rights in respect thereof, and the Corporation may regard the Certificate, whether or not validly issued, as having been invalidly issued. The Board may establish reasonable procedures with respect to the order in which and terms upon which such transfers may be given effect when the transfer to non United States Citizens of shares evidenced by Domestic Share Certificates will not result in reducing the ownership of shares by United States Citizens below the Minimum U.S. Ownership. In the case of any permitted transfer to non United States Citizens of shares evidenced by Domestic Shares Certificates, and in the case of any transfer to non United States Citizens of shares evidenced by Foreign Share Certificates, the share certificates issued to the transferee in respect of the shares transferred shall be Foreign Share Certificates.

The Board may establish from time to time reasonable procedures for establishing the citizenship of stockholders of the Corporation and, without limiting the foregoing, may require that in connection with each issue or transfer of shares of the Corporation the purchaser or transferee shall certify his citizenship status and such matters relevant thereto as the Board may require.

The Board may also establish from time to time such other reasonable procedures as it may deem desirable for the purposes of implementing the provisions of Article FIFTH of the Certificate of Incorporation and this Article VIII.

ARTICLE IX

CAPITAL STOCK

SECTION 1.        Form and Issuance. Subject to Article VIII of these By Laws, certificates of stock shall be issued in such form as may be approved by the Board of Directors and shall be signed by, or in the name of the Corporation by, the President or any of the Vice Presidents, and by the Treasurer or an Assistant Treasurer or the Secretary or an Assistant Secretary of the Corporation; provided, however, that if any such certificate is countersigned (1) by a transfer agent other than the Corporation or its employee, or, (2) by a registrar other than the Corporation or its employee, the signatures of the officers of the Corporation and the seal of the Corporation on such Certificate may be facsimiles. In case any officer who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer before such certificate is issued, it may be issued by the Corporation with the same effect as if he were such officer at the date of issue.

The Corporation shall be entitled to treat the holder of record of any shares or shares of stock as the owner in fact thereof and, accordingly, shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person, whether or not it has actual or other notice thereof, save as provided by the laws of the State of Delaware.

SECTION 2.        Transfer of Shares of Stock. Except as otherwise provided in the Certificate of Incorporation or in these By Laws, shares of stock shall be transferable on the books of the Corporation by the holder thereof or by his attorney thereunto duly authorized upon the surrender and cancellation of certificates for a like number of shares.

SECTION 3.        Old Certificates to be Cancelled; Lost, Stolen, or Destroyed Certificates. Except in cases of lost, stolen or destroyed certificates, and in that case only after conforming to the requirements hereinafter provided, no new certificates shall be issued until the former certificate for the shares represented thereby shall have been surrendered and canceled.

Any person claiming a certificate of stock to be lost or destroyed shall make such affidavit or affirmation of that fact as the Board of Directors may require and at the option of the Board of Directors shall give the Corporation and/or its transfer agent or agents, registrar or registrars, a bond of indemnity, in the form and with one or more sureties satisfactory to the Board of Directors, whereupon a new certificate may be issued of the same tenor and for the same number of shares as the one alleged to have been lost or destroyed, and, if required by such Board, a final order or decree of a court of competent jurisdiction of the right of any such person to receive a new certificate shall be procured.

SECTION 4.        Fixing of Record Date. In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which shall not be more than sixty, nor less than ten days before the date of such meeting, nor more than sixty days prior to any other action. Only such stockholders as shall be stockholders of record on the date so fixed shall be entitled to such notice of, and to vote at, such meeting and any adjournment thereof, or to receive payment of such dividend or other distribution, or to receive such allotment of rights, or to exercise such rights in respect of any such change, conversion or exchange of stock, or to participate in such other action or to give such consent, as the case may be, notwithstanding any transfer of any stock on the books of the Corporation after any such record date fixed as aforesaid. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

SECTION 5.        Regulations. The Board of Directors may make such regulations as it may deem expedient concerning the issue, transfer and registration of stock and may from time to time appoint such transfer agents or registrars of shares as it may deem advisable and may define their powers and duties.

ARTICLE X

NEGOTIABLE INSTRUMENTS, CONTRACTS, ETC.

SECTION 1.    Signatures on Checks, Etc. All checks, drafts, bills of exchange, notes or other instruments or orders for the payment of money or evidences of indebtedness shall be signed for or in the name of the Corporation by such officer or officers, person or persons, as the Board of Directors may from time to time designate by resolution, and in the absence of such resolution by the President or any of the Vice Presidents.

SECTION 2.    Execution of Contracts. The President or any of the Vice Presidents, and any other officer or officers that the Board of Directors may designate shall have full authority in the name of and on behalf of the Corporation to enter into any contract or execute and deliver any instruments or notes, or other evidences of indebtedness unless such authority shall be limited by the Board of Directors to specific instances.

SECTION 3.    Bank Accounts. All funds of the Corporation shall be deposited from time to time to the credit of the Corporation in such banks, trust companies or other depositories as the Board of Directors may select or as may be selected by any officer or officers, agent or agents of the Corporation to whom such power may from time to time be delegated by the Board of Directors.

ARTICLE XI

CORPORATE SEAL

The seal of the Corporation shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal − Delaware." Said seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced in any manner whatsoever.

ARTICLE XII

FISCAL YEAR

The fiscal year of the Corporation shall end on such date as may be determined by the Board of Directors.

ARTICLE XIII

VOTING OF STOCK HELD

Unless otherwise provided by resolution of the Board of Directors, the President or any of the Vice Presidents may from time to time appoint an attorney or attorneys or agent or agents of the Corporation, in the name and on behalf of the Corporation, to cast the votes that the Corporation may be entitled to cast as a stockholder or otherwise in any other corporation or association, any of whose stock or securities may be held by the Corporation, at meetings of the holders of the stock or other securities of such other corporation or association, or to consent in writing to any action by any such other corporation or association, and may instruct the person or persons so appointed as to the manner of casting such votes or giving such consents, and may execute or cause to be executed on behalf of the Corporation and under its corporate seal, or otherwise, such written proxies, consents, waivers or other instruments as he may deem necessary or proper in the premises; or the President or any of the Vice Presidents may himself attend any meeting of the holders of stock or other securities of any such other corporation or association and thereat vote or exercise any or all other powers of the Corporation as the holder of such stock or other securities of such other corporation or association, or may consent in writing to any action by any such other corporation or association.

ARTICLE XIV

AMENDMENTS

The Board of Directors at any regular meeting or special meeting called for the purpose, and the stockholders at any annual meeting or special meeting called for the purpose, may make, alter, amend or repeal the By Laws of the Corporation or any of them and, in the latter case, provided that notice of such alteration, amendment or repeal or adoption of new By−Laws is contained in the notice of such meeting of stockholders.

ARTICLE XV

INDEMNIFICATION

SECTION 1.    Right to Indemnification. The Corporation shall indemnify and hold harmless, to the fullest extent permitted by applicable law as it presently exists or may hereafter be amended, any person (a "Covered Person") who was or is made or is threatened to be made a party to or a witness in or is otherwise involved in any action, suit, claim, inquiry or proceeding, whether civil, criminal, administrative or investigative (including an action by or in the right of the Corporation) and whether formal or informal (a "Proceeding"), by reason of the fact that he or she, or a person for whom he or she is the legal representative, is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, trustee or agent of another corporation or of a partnership, joint venture, trust, nonprofit entity or other entity, including service with respect to employee benefit plans, against all liability and loss suffered, and expenses (including attorneys' fees) actually and reasonably incurred, by such Covered Person in connection with such Proceeding. Notwithstanding the preceding sentence, except as otherwise provided in Section 3, the Corporation shall

be required to indemnify or advance expenses to a Covered Person in connection with a Proceeding (or part thereof) commenced by such Covered Person (and not by way of defense) only if the commencement of such Proceeding (or part thereof) by the Covered Person (i) was authorized in the specific case by the Board of Directors, or (ii) was brought to establish or enforce a right to indemnification under these by laws, the Corporation's Certificate of Incorporation, any agreement, the Delaware General Corporation Law or otherwise.

SECTION 2.        Prepayment of Expenses. The Corporation shall to the fullest extent not prohibited by applicable law pay the expenses (including attorneys' fees) actually and reasonably incurred by a Covered Person who was or is made or is threatened to be made a party to or a witness in or is otherwise involved in any Proceeding, by reason of the fact that he or she, or a person for whom he or she is the legal representative, is or was a director or officer of the Corporation or, while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, employee, trustee or agent of another corporation or of a partnership, joint venture, trust, nonprofit entity or other entity, including service with respect to employee benefit plans in advance of its final disposition, provided, however, that, to the extent required by law, such payment of expenses in advance of the final disposition of the proceeding shall be made only upon receipt of an undertaking by the Covered Person to repay all amounts advanced if it should be ultimately determined that the Covered Person is not entitled to be indemnified under this Article XVI or otherwise.

SECTION 3.        Claims. If a claim for indemnification (following the final disposition of such action, suit or proceeding) or advancement of expenses under this Article XVI is not paid in full within thirty days after a written claim therefor by the Covered Person has been presented to the Corporation, the Covered Person may file suit against the Corporation to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim. In addition, the Covered Person may file suit against the Corporation to establish a right to indemnification or advancement of expenses. In any such action the Corporation shall have the burden of proving by clear and convincing evidence that the Covered Person is not entitled to the requested indemnification or advancement of expenses under applicable law.

SECTION 4.        Non–exclusivity of Rights. The rights conferred on any Covered Person by this Article XVI shall not be exclusive of any other rights which such Covered Person may have or hereafter acquire under any statute, provision of the Certificate of Incorporation, these By–Laws, agreement, any insurance policy, vote of stockholders or disinterested directors or otherwise.

SECTION 5.        Other Sources. The Corporation's obligation, if any, to indemnify or to advance expenses to any Covered Person who was or is serving at its request as a director, officer, employee or agent of another corporation, partnership, joint venture, trust, enterprise or nonprofit entity shall be reduced to the extent such Covered Person has otherwise actually received payment (under any insurance policy or otherwise) of the amounts otherwise payable by the Corporation.

SECTION 6.        Amendment or Repeal. Any repeal or modification of the provisions of this Article XVI shall not adversely affect any right or protection hereunder of any Covered Person in respect of any act or omission occurring prior to the time of such repeal or modification.

SECTION 7.        Other Indemnification and Prepayment of Expenses. This Article XVI shall not limit the right of the Corporation, to the extent and in the manner permitted by law, to indemnify and to advance expenses to persons other than Covered Persons when and as authorized by appropriate corporate action.

EXHIBIT D

## CONSENT FOR REMOVAL

Defendants Citigroup Global Markets Inc., Morgan Stanley & Co. LLC (f/k/a Morgan Stanley & Co. Incorporated), HSBC Securities (USA) Inc., Deutsche Bank Securities Inc., DNB Markets, Inc., (f/k/a DnB NOR Markets, Inc.), Goldman, Sachs & Co., and ING Financial Markets LLC (the "Underwriter Defendants") consent to the removal of *Paul Otto Koether IRA Rollover et al.* v. *Morten Arntzen et al.*, Index No. 654037/2012, currently pending in the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

By filing this consent, the Underwriter Defendants do not waive, and expressly preserve, all rights and defenses, including but not limited to lack of personal jurisdiction.

Dated:        December 13, 2012
              New York, New York

SHEARMAN & STERLING LLP

By: _____
    Adam S. Hakki

Stuart J. Baskin
Christopher R. Fenton
599 Lexington Avenue
New York, New York 10022-6069
Tel.  (212) 848-4000
Fax  (212) 848-7179
sbaskin@shearman.com
ahakki@shearman.com
christopher.fenton@shearman.com

*Attorneys for the Underwriter Defendants*

## CONSENT FOR REMOVAL

I, Morten Arntzen, consent to the removal of *Paul Otto Koether IRA Rollover et al.* v. *Morten Arntzen et al.*, Index No. 654037/2012, currently pending in the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

By filing this consent, I do not waive, and expressly preserve, all rights and defenses, including but not limited to lack of personal jurisdiction.

Dated:          December/3, 2012
                New York, New York


_____
Morten Arntzen
1018 Weed Street
New Canaan, CT 06840